Richard **FOWLER**, Appellant,

v.

Robert **PARRATT**, Warden, Nebraska Penal Complex, Appellee.

No. 81–2128.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1982.

Decided July 9, 1982.

---

Steven C. Turner, Omaha, Neb., for appellant.

Paul L. Douglas, Atty. Gen., Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before McMILLIAN, Circuit Judge, MARKEY,* Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Richard Fowler appeals the district court's[1] denial of his petition for a writ of habeas corpus. For reversal Fowler argues that (1) he received ineffective assistance of counsel, (2) he was denied his constitutional right to confront and cross-examine a witness, (3) there was insufficient evidence to support his conviction, and (4) the application of Nebraska's habitual criminal statute in this case constitutes cruel and unusual punishment in violation of the Constitution. For the reasons discussed below, we affirm the district court's denial of the petition.

Fowler was convicted by a jury of embezzling approximately $433.00 in April 1974. In December 1973 and January 1974, Fowler was the manager of a Steak-O-Rama restaurant, one in a chain operated by an Iowa corporation. Fowler worked at the Lincoln, Nebraska restaurant. On January 25, 1974, Fowler met with Paul Consiglio, a local area manager for the chain, and Kevin Knapp, the assistant manager of the Lincoln restaurant. The meeting began at about midnight, after the close of business, and ended at approximately 5 a. m. on January 26. Consiglio prepared a daily report, counted that day's receipts, prepared that day's bank deposit and gave it to Fowler to recount and verify as correct during this meeting. The usual procedure after these steps had been taken was to place the day's receipts in a bank bag which would be deposited in a local bank by a Steak-O-Rama employee during the night. Fowler was given the bag with the money in it on January 26, but the deposit was never made.

Consiglio returned to the Lincoln restaurant on other business the afternoon following his meeting with Fowler and Knapp. He was told that Fowler had left the restaurant in order to pick up a car he had purchased. Fowler did not come back to the restaurant while Consiglio was there that day.

Consiglio was the principal witness at Fowler's trial. The area manager stated that the bank bag was equipped with a lock to which Fowler, Knapp and the bank had keys. He also explained the procedure used

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

to reconcile the bank statement with Steak-O-Rama's reports; the use of this procedure led to the discovery that deposits had not been made for January 22 or for January 25.

An employee of the car dealership testified at Fowler's trial that on January 25, Fowler signed a purchase agreement for a Catalina, leaving a down payment of $350. The down payment was given in the form of a large handful of bills, according to the employee. Fowler had used a car previously purchased from the same dealership as a trade-in for the Catalina. He had made a cash down payment of $175 for that first car.

After his conviction on the embezzlement charge, Fowler was convicted as an habitual criminal in a separate proceeding. Fowler was sentenced to and is presently serving a term of ten to fifteen years in a Nebraska prison. His conviction was affirmed on appeal. *State v. Fowler*, 193 Neb. 420, 227 N.W.2d 589 (1975).

Fowler filed a petition for a writ of habeas corpus in the district court; Fowler's petition was eventually denied on the merits.[2] This appeal followed.

## I. *Ineffective Assistance of Counsel*

Fowler first argues that he was denied his sixth amendment right to effective assistance of counsel. He contends that his counsel's representation was deficient in four areas: investigation, conduct during trial, failure to be present for delivery of the verdict, and alcohol abuse. Fowler argues that the district court should have considered the cumulative as well as the individual effect of these areas in determining whether he was denied effective assistance of counsel.

■ *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974), set out the basic two-part standard for judging claims of ineffective assistance of counsel. First, there must have been a failure on the part of defense counsel to perform some essential duty owed to the client; second, that failure must have resulted in prejudice to the defense. *Id.* at 218. It is not, however, necessary to prove that the defendant would have been acquitted in the absence of the ineffective assistance. *Thomas v. Wyrick*, 535 F.2d 407, 414 (8th Cir.), *cert. denied*, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). Fowler argues that his defense was prejudiced by his counsel's less than adequate performance.

■ Fowler complains that his attorney, Dean Erickson, failed to investigate on his behalf. The charge is based in part on the fact that no documents were introduced as evidence at trial to show that the deposit for January 25 had not been made. This fact was established solely by Consiglio's testimony, which consisted largely of hearsay. Fowler argues that proof of the crime of embezzlement necessarily involves documentary evidence, therefore it was incumbent upon Erickson, who was also a certified public accountant, to review all relevant documents and examine them for possible errors or inaccuracies. The fact that discrepancies existed between the bank statement and the restaurant's "red book"[3] and went unnoticed or ignored shows, Fowler argues, that Erickson failed to conduct an adequate investigation.

Fowler further points out that Erickson did not obtain a transcript of Fowler's preliminary hearing and that Erickson interviewed only two out of thirteen potential witnesses for the state. Erickson failed to interview Consiglio, the chief witness for the prosecution, and the investigating police officers who spoke with Fowler. Fowler argues that effective cross-examination of

---

**2.** The district court initially denied Fowler's petition without prejudice for failure to exhaust his state remedies. Fowler then filed an unsuccessful motion in state court to vacate his sentence under the Nebraska Post Conviction Act, Neb.Rev.Stat. § 29–3001 to 29–3004 (1943); the denial of his motion was affirmed on appeal. Fowler returned to petition the district court for relief which was denied on the merits.

**3.** The "red book" is a deposit record book used by Steak-O-Rama's Lincoln restaurant. Deposits are recorded in the ledger and stamped with a date by the bank.  ο

the state's witnesses was impossible without a prior interview of each witness, and that he was prejudiced by this omission. A review of the transcript, Fowler argues, would have revealed that other employees had access to the deposit bag and its key.

The last area in which Fowler claims Erickson failed to investigate concerns the Catalina Fowler purchased. Fowler argues that Erickson did not vigorously pursue an important element of his defense, that is, that Fowler's financial condition was such that he did not need the embezzled funds to purchase the Catalina.

During Fowler's post-conviction relief proceeding, the state court found that Erickson had made a reasonably thorough investigation of the restaurant's business and bank records. The court also found that Erickson had extensively cross-examined Consiglio regarding those records and business procedures at Fowler's preliminary hearing, and had concluded that the introduction of those records would not have been advantageous to Fowler's defense.[4] These findings were affirmed by the Nebraska Supreme Court. *State v. Fowler*, 201 Neb. 647, 271 N.W.2d 341 (1978). The district court presumed these findings to be correct, and, after holding an evidentiary hearing, concluded that Fowler failed to prove by convincing evidence that the factual findings were erroneous.[5]

The district court also pointed out, in relation to Fowler's charge that Erickson did not adequately interview potential witnesses, that Fowler could not give any names when asked whom he would have wanted to call as witnesses. The district court found that Erickson did interview the two witnesses whose names Fowler gave him, although it did recognize the inadequacy of Erickson's failure to interview Consiglio aside from his cross-examination during Fowler's preliminary hearing. The district court found, however, that Fowler did not suffer any material prejudice because Fowler did not establish that evidence helpful to his defense would have been uncovered had Erickson interviewed Consiglio independently or had he interviewed other witnesses. *See McQueen v. Swenson*, 498 F.2d at 220.

Fowler's complaint regarding Erickson's conduct at trial was also unsuccessful in the district court. Fowler's attorney did not object to Consiglio's hearsay testimony concerning Steak-O-Rama's business records. He also failed to request the hearing authorized by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964),[6] regarding a statement Fowler allegedly made to investigating officer Sellmeyer in the presence of Consiglio.

Fowler argues that the existence of the missing deposit was proved only by hearsay testimony which was not objected to by Erickson. The Nebraska Supreme Court concluded that this was trial strategy rather than ineffectiveness, and the district court agreed based on its conclusion that the introduction of the documentary evidence would have been damaging to Fowler's case.

Erickson's failure to object to Consiglio's discussion of Fowler's conversation with Officer Sellmeyer was found not to be prejudicial to Fowler's defense by the district court. Fowler allegedly gave conflicting stories to two different police officers. He

---

**4.** Most of the entries in the "red book" were made by stamp. The entry for the January 25 deposit was made by hand. Erickson could reasonably have believed that introduction of the records would assist the state's case rather than Fowler's, because any inconsistency might be resolved in favor of the reliability of the bank statements as opposed to the "red book" entries.

**5.** The factual findings of the state trial and appellate courts are presumed correct by the district court unless the petitioner establishes one of the eight statutory exceptions which bar the use of the presumption, 28 U.S.C. § 2254(d)(1)–(8), or proves by convincing evidence that the factual findings are erroneous. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

**6.** A defendant is entitled to a separate hearing regarding the voluntariness of a confession out of the presence of the body which determines guilt or innocence. *Jackson v. Denno*, 378 U.S. at 394, 84 S.Ct. at 1790.

told one, Officer Sellmeyer, that he had left the restaurant with the deposit and had taken Knapp, the assistant manager, home; he then returned to the restaurant and put the money inside in a locked cabinet. Fowler had given a prior statement to Officer Buckner, which was inconsistent in several points. Officer Sellmeyer testified first at trial. Erickson waived the *Jackson v. Denno* hearing. A *Jackson v. Denno* hearing was held during Officer Buckner's testimony, and the state trial court permitted him to testify before the jury. Consiglio testified concerning the conversation Fowler had with Officer Sellmeyer; therefore, Fowler argues, making a request for a *Jackson v. Denno* hearing would have been appropriate before allowing Consiglio to testify regarding the substance of the conversation. Fowler argues that this is an example of Erickson's overall ineffectiveness. The district court held that Fowler failed to show that he was prejudiced by this omission because he did not allege that his statement to Officer Sellmeyer was involuntary, was the product of coercion or fear, or was given without the benefit of *Miranda* warnings.

Fowler's third complaint of ineffective assistance is that Erickson's failure to be present during the delivery of the verdict, while perhaps an inadequate independent ground for habeas corpus relief, is indicative of Erickson's general neglect and ineffectiveness. The district court held that Erickson's absence during the time the verdict was given is not a sufficient ground for granting relief.

■ Fowler's last specific claim of ineffective assistance of counsel relates to Erickson's alcoholism. In 1979, after disciplinary proceedings had been filed against him, the Nebraska Supreme Court found Erickson incompetent to practice law because he was an alcoholic. During a deposition Erickson admitted that he was an alcoholic and suffered from blackouts during the time period in which he represented Fowler. The district court rejected this argument because Erickson also testified that his alcoholism did not affect his representation of Fowler. On appeal Fowler argues that once it is established that the attorney is an alcoholic, there should be a rebuttable presumption that his representation was ineffective.

We find the district court's opinion to be well-reasoned on this issue and we affirm that court's holding accordingly. Fowler has failed to show that he was prejudiced by any of the errors he contends were committed, whether those errors are considered singly or in conjunction.

Fowler did not, as the district court noted, show that there was evidence available in support of his defense which Erickson should have uncovered in a reasonable investigation in connection with the business records or with the witnesses.

Fowler has also failed to show how he was prejudiced by Erickson's alleged failure to investigate Fowler's financial position. It appears from the record that Erickson did investigate. Fowler's brother began to testify on that issue; however, the state successfully objected to the testimony's admission. Erickson also knew that Fowler's probation officer would testify on Fowler's behalf, though he was not called to do so. In addition, Fowler has not shown what details concerning his financial position would have been proved had each testified. Fowler has not met the second part of the two-step analysis in *McQueen v. Swenson.*

Fowler did not show that Erickson's failure to object to the hearsay testimony was anything other than a tactical decision to avoid having other, more damaging evidence introduced or show how Erickson's presence would have helped him. We decline to adopt a rule allowing for the presumption of ineffective assistance where counsel's alcoholism has been established.

## II. Constitutional Rights to Confrontation and Cross-Examination

■ Consiglio testified that he received the information concerning the missing deposit from a bookkeeper at Steak-O-Rama's headquarters who did not appear at trial. Fowler argues that he was wrongfully de-

nied the opportunity to confront this witness against him although he did not object to Consiglio's hearsay testimony. He argues that inadmissible hearsay evidence established the fact that the January 25 deposit was missing, and that without this evidence there would have been no basis for the charge of embezzlement. Fowler argues that it involves speculation to say that the state would have introduced Steak-O-Rama's business records to prove that no deposit had been made for January 25, therefore his petition should be granted.

■ In Nebraska trial courts, any errors involving the receipt of incompetent evidence are presumed to have been waived unless they were objected to when the evidence was offered. *Ring v. Kruse*, 62 N.W.2d 279, 283 (Neb.1954). The Nebraska Supreme Court found, and the district court agreed, that Fowler had waived his confrontation right by failing to object to Consiglio's testimony.

■ Because no objection to Consiglio's testimony was made at the trial, the district court determined whether Fowler's claim was reviewable under the standard set out in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also United States v. Frady*, 454 U.S. 809, 102 S.Ct. 84, 70 L.Ed.2d 78 (1982); *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under *Wainwright*, a petitioner for habeas corpus relief must show cause for failing to object and must show that actual prejudice resulted from an alleged constitutional violation. *Id.* at 87, 97 S.Ct. at 2506. The Eighth Circuit applies this contemporaneous objection rule where the alleged waiver of a constitutional claim related to elements of the trial such as waived objections or counsel's tactical decisions, where those decisions were made by counsel rather than the defendant. *See Graham v. Mabry*, 645 F.2d 603, 605 (8th Cir. 1981); *Dietz v. Solem*, 640 F.2d 126 (8th Cir. 1981). Fowler claimed that ineffective assistance of counsel was the cause for his lack of objection to Consiglio's testimony. The district court held that Fowler had failed to show cause, relying on its earlier determination that Erickson did not object for tactical reasons. Because both cause and prejudice must be demonstrated under *Wainwright*, the district court did not reach the issue of prejudice.

We agree that Fowler has not demonstrated cause for the failure to object to the manager's hearsay testimony. We reiterate that we agree that Erickson's failure to object to the testimony was an example of trial strategy rather than ineffective assistance, therefore the denial of Fowler's petition for writ of habeas corpus is affirmed as to this claim.

### III. *Sufficiency of the Evidence*

■ Fowler's third argument is that he was denied due process of law in that the evidence introduced against him at trial was not sufficient to sustain his conviction. Fowler argues that (1) there was no evidence that he was insolvent, (2) several employees had access to the deposit, (3) there is a weak nexus between the missing deposit and the subsequent purchase of the Catalina, and (4) the evidence favorable to the prosecution consists largely of hearsay.

The district court first set out the standard used in evaluating claims of insufficient evidence in habeas corpus petitions. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). *Accord, Hixson v. Housewright*, 642 F.2d 242, 245 (8th Cir. 1981).

After reviewing the record according to this standard, the district court found that Fowler's conviction was supported by the evidence. The district court noted the testimony that Fowler had access to the missing deposit at all times and that Fowler never told anyone that a deposit had not been made for January 25. The district court also noted that the facts did not support Fowler's defense that the deposit was not

made because the keys to the night depository at the bank had been missing for two weeks preceding January 25. Fowler never told anyone at Steak-O-Rama that the keys were missing and did not give this explanation for failure to make the deposit to Officer Buckner. In addition, Knapp, who rode home regularly with Fowler, testified that regular deposits had been made during the weeks prior to January 25. Fowler's inconsistent statements to Officers Buckner and Sellmeyer were also noted by the district court.

The district court found that a rational trier of fact could conclude that Fowler was guilty of embezzling the funds for the January 25 deposit and we agree. The evidence introduced at Fowler's trial, viewed in the light most favorable to the prosecution, supports the district court's holding. The fact that the evidence against Fowler is circumstantial does not make it less probative, *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), and we hold that Fowler's petition for habeas corpus relief was properly denied on this ground.

### IV. *Cruel and Unusual Punishment*

■ Fowler last argues that the sentence he received under Nebraska's habitual criminal statute[7] is violative of the eighth amendment protection against cruel and unusual punishment because it is disproportionate to the severity of the crimes involved. Fowler was sentenced to ten to fifteen years in prison on the basis of three convictions: the first was for issuing an insufficient funds check in the amount of $40; the second involved possession of a forged instrument in the amount of $100; the third is the embezzlement conviction which forms the basis for Fowler's request for post-conviction relief.

Fowler, relying on the proportionality analysis of *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), argues that if he serves the minimum sentence of ten years, he will have served approximately one year for every $60 of alleged offense. Fowler cites the *State of Nebraska Department of Correctional Services Annual Report for 1974–75* which gives a breakdown of offenses committed and punishment received for the Nebraska prison population at the time Fowler was sentenced. Fowler points out that approximately 92 percent of the inmates received lesser sentences than Fowler's, 6 percent received equal sentences and 1.4 percent received harsher sentences. Fowler also stresses that he has not demonstrated violent tendencies, and that therefore his sentence is disproportionate and excessive.[8]

After Fowler submitted his brief to the district court and before the district court gave its decision, the Supreme Court decided *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). *Rummel* allowed a mandatory life sentence to stand for a recidivist who had committed three offenses involving a total of approximately $230. The Supreme Court rejected the petitioner's *Weems*-based proportionality argument. The district court denied Fowler's habeas corpus petition on the basis of *Rum-*

---

**7.** At the time of petitioner's sentencing, Section 29–2221 provided in relevant part:

(1) Whoever has been twice convicted of a crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment in the Nebraska Penal and Correctional Complex for a term of not less than ten nor more than sixty years; *Provided*, that no greater punishment is otherwise provided by

statute, in which case the law creating the greater punishment shall govern.
Neb.Rev.Stat. § 29–2221 (Reissue 1975).

**8.** The proportionality analysis was expanded in *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974). Factors to be considered in determining whether a sentence is disproportionate to the underlying charge are the nature of the offense, the legislative purpose behind the statutory punishment, the type of punishment imposed by other jurisdictions for the same crime and the type of punishment given in the same jurisdiction for other crimes. *Hart v. Coiner*, 483 F.2d at 140–42.

*mel,* stating that Fowler's case involved a lighter sentence and less monetary value.

Fowler argues that *Rummel* does not reverse the Supreme Court's earlier ruling in *Weems* and that *Rummel* should be limited to its facts. We agree with the district court, however, that *Rummel* is dispositive of this issue. A direct comparison of the facts involved here, with those in the *Rummel* decision, show that Fowler's case is not distinguishable on any important point.

The decision is hereby affirmed. *See* 8th Cir. R. 14.