430 So.2d 1005 (1983)
STATE of Louisiana
v.
Benjamin BERRY.
No. 82-K-2515.
Supreme Court of Louisiana.
April 4, 1983.
Concurring Opinion May 10, 1983.
Rehearings Denied May 20, 1983.
Concurring Opinion May 26, 1983.
*1006 Joseph L. Montgomery, Metairie, Martha Sassone, Gretna, for relator.
*1007 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William C. Credo, III, Gordan Konrad, Asst. Dist. Attys., for respondents.
WATSON, Justice.[*]
Defendant, Benjamin Berry, entered a branch bank in Jefferson Parish to commit an armed robbery and shot a security guard, an off-duty deputy sheriff, to death. Berry was tried and convicted of first degree murder. After a sentencing hearing, the jury recommended the death penalty and Berry was sentenced accordingly. The conviction and sentence were affirmed. State v. Berry, 391 So.2d 406 (La., 1980), cert. denied 451 U.S. 1010,101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). Defendant then filed a petition for writ of habeas corpus in the Twenty-Fourth Judicial District Court.
At the evidentiary hearing held by Judge Thomas Wicker on the application, defendant contended that attorney Fred Blanche, III, counsel retained for trial and appeal, was using narcotics from February, 1978, when he was engaged, until October, 1978, the month of trial. Defendant also argued that his counsel was ineffective for other reasons. After hearing the witnesses, the trial court held:
"... that petitioner has failed to prove that Blanche consumed any drugs during his representation of Berry which adversely affected Blanche's representation of petitioner. That leaves for consideration petitioner's contention that Blanche failed to properly investigate, prepare, interview and call lay and expert witnesses and generally failed to adequately prepare for the trial of a first degree murder case.
* * * * * *
"After reviewing the entire record of this case and hearing the testimony during these proceedings, this court is persuaded that Fred Blanche, III, did render reasonably effective assistance to petitioner." (Docket No. 82-K-2515, Vol. I, Tr. 221-222)
A writ was granted to review the decision of the trial court. Defendant contends that the trial court erred in ruling that he had effective assistance of counsel at trial and sentencing.
LEGAL STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL
Defendants in criminal trials are entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Art. 1, § 13 of the Louisiana Constitution. "Effective assistance" is difficult to define. Louisiana requires that counsel "meet the level of competency normally demanded in criminal cases". State v. Felde, 422 So.2d 370 at 393 (La., 1982). This is essentially the standard enunciated in McMann v. Richard, 397 U.S. 759 at 771, 90 S.Ct. 1441 at 1449, 25 L.Ed.2d 763 at 773 (1970). In the sentencing phase of a capital case, defendant is entitled to "the reasonably competent assistance of an attorney acting as a diligent, conscientious advocate for his life." State v. Myles, 389 So.2d 12 at 28 (La., 1979).
The United States Supreme Court recognizes defendants' right to a lawyer who is within the normal range of competence, the McMann definition of effective counsel, and recently expressed the requirement as "a competent attorney." Engle v. Isaac, 456 U.S. 107 at 134, 102 S.Ct. 1558 at 1574, 71 L.Ed.2d 783 at 804 (1982). However, the nation's highest court has never refined its definition, leaving the task to the circuit courts. See McQueen v. Swenson, 498 F.2d 207 at 214 (8 Cir.1974) and the six opinions filed by the United States Court of Appeal, Fifth Circuit, Unit B, in Washington v. Strickland, 693 F.2d 1243 (1982). One scholarly treatment of the subject notes:
"Implicitly, the sixth amendment also guarantees a right to effective assistance, but the Supreme Court has never fully defined the scope of this right. Without firm guidance, the circuits have experimented with numerous definitions of `effective *1008 aid,' and a consensus has finally emerged. Nearly every federal court now equates effective assistance of counsel with competent representation." (Footnotes omitted) 65 Cornell Law Review 659 at 660, 661.
A "competent attorney" giving competent representation is essentially one who "meet[s] the level of competency normally demanded". Felde, supra.
An outstanding analysis of the law and logic involved in considering claims of ineffective assistance of counsel is found in McQueen v. Swenson, supra.[1]McQueen elucidates a two-step inquiry for determining effectiveness of counsel as follows:
"Evaluation of a habeas corpus petition alleging ineffective assistance of counsel is a two-step process: first, determining,... whether there has been a failure to perform some duty, as essential as the duty of investigation, owed by a defense attorney to his client; and second, determining,... whether that failure prejudiced his defense." 498 F.2d 207 at 218.
McQueen involved a first degree murder trial where the state produced twenty-six witnesses to negate defendant's self-defense theory. The attorney appointed to represent defendant testified that trial preparation consisted of several jail interviews with his client, most of which were spent discussing another homicide charged against the man. The attorney knew of the forty-one witnesses, including the twentysix who testified, listed on the indictment, but did not undertake to interview any of them. His general policy was not to interview prosecution witnesses because he did not consider it his duty and he thought it put a lawyer in a "bad light". 498 F.2d 207 at 212.
The McQueen court found that the attorney had violated his duty of adequate preparation for trial, but placed the burden on the petitioner in the habeas proceedings to establish prejudice resulting from that inadequate preparation. The holding was summarized as follows:
"... [f]ailure to make a reasonable investigation may amount to ineffective assistance of counsel...."
* * * * * *
However, "... the failure to investigatethough a constitutional error might in certain circumstances be a `harmless one' and hence would not justify habeas corpus relief.... Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)...."
* * * * * *
On remand "... the petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial. Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the admission of such evidence was harmless beyond a reasonable doubt." 498 F.2d 207 at 217, 218 and 220.
The two-step McQueen analysis is particularly appropriate when it is alleged in a habeas proceeding that counsel was ineffective for lack of preparation. To reiterate: (1) the first inquiry is whether counsel has violated a duty to his client, for example, failing to prepare for trial; and, if so (2) the second inquiry is whether the violation has resulted in prejudice to the defense of the case.[2] The initial burden of proof is on *1009 defendant, but, once met, he is entitled to a new trial unless the court can say beyond a reasonable doubt the error was harmless. Fowler v. Parratt, 682 F.2d 746 (8 Cir., 1982). Compare United States v. Baynes, 687 F.2d 659 (3 Cir., 1982). See 59 N.W. L.R. 289 at 304 and 78 Harvard L.Rev. 1434. EVIDENTIARY HEARING ON WRIT APPLICATION
The evidence at the evidentiary hearing on defendant's application for writ of habeas corpus focused primarily on the alleged use of drugs by counsel and is summarized as follows:
Roger LeBlanc, a former friend of attorney Blanche, gave considerable testimony concerning Blanche's use of drugs. According to LeBlanc, Blanche was a frequent user of drugs during the period which would have coincided with the preparation and trial of defendant's case. LeBlanc admitted that he and Blanche are no longer friends; on the contrary, they are litigating a personal lawsuit involving several million dollars.
Melroy McCrossen, the assistant manager of the branch bank on the day of the homicide, testified that defendant "walked in shooting" (Docket No. 82-K-2515, Vol. 2, Tr. 247).
Witness Mary Davis gave only meager testimony and witness Anthony Kelly took the Fifth Amendment. Gary Eldridge, a private investigator, identified a report.
Martha Berry, the mother of defendant, testified that she retained attorney Blanche, being unaware that he was on probation for a drug violation in Florida. According to Mrs. Berry, Blanche did not interview her about defendant's family history or childhood. She testified that Blanche first informed her in the courtroom after defendant was convicted that she would be a witness at the sentencing. Being too emotional at that point to speak, she could not testify.
Carole Wunderlich, co-owner with her husband of a radiator service in Baton Rouge, said she told Blanche that she would come to the trial and testify on behalf of Berry that he was a good worker and a trusted friend. However, she would have had to admit that she did not know Berry was a member of a motorcycle gang and bought a gun to do battle if necessary with other gangs. Also, she would have had to disclose to the jury that defendant smoked pot and received an undesirable discharge from the military.
It was stipulated that two brothers and a sister of defendant, if called at trial, would have testified substantially the same as Wunderlich on behalf of Berry. Another witness, one Frank Elino, was not present but apparently it was stipulated that he would have also testified on behalf of the defendant at the sentencing hearing.
Frank Zaccaria, a district judge of approximately sixteen years experience, presided over the guilt and sentencing phase of Berry's trial and testified that Blanche's defense work was "outstanding". After noting that Blanche appeared before him not only at trial but in connection with many pretrial motions, Judge Zaccaria summed up Blanche's performance as a lawyer as follows:
"Frankly, I thought it was outstanding to a point where I complimented him from the bench. I think that the transcripts will show that. At one time he did everything he could in his power and he used every strategy that he could, including suggestions to the court, because of the trial strategy, that he wanted me to declare him incompetent. And I told him just the opposite, that I thought he did an outstanding job." (Docket No. 82-K-2515, Vol. II, Tr. 373-374) *1010 The judge had no reason to suspect that Blanche was on drugs at any time during trial.
Dr. Richard Eugene Gary testified as to the appearance of a person either taking cocaine or "crashing" from cocaine.
Ruth East testified that she had talked to the district attorney's office but never to Blanche. Following the homicide, she was outside the bank and saw defendant leave. She described him as looking like a "zoombie" (sic) and walking strangely. (Defendant had been shot in the lower part of the left chest by the security guard.)
Dr. Monroe Samuels talked about bullets and the paths taken by them in this victim and defendant.
Joseph Darby, a reporter experienced in court proceedings, covered the trial. Talking to Blanche at least once a day throughout, he noticed nothing unusual. In his opinion, Blanche did an "effective job".
Attorney Jay C. Zainey represented Pennington, who was involved in the abortive bank robbery with Berry, and described Blanche's performance as "fine". Zainey and Blanche worked together, providing each other with copies of pleadings, discussing strategy and motions, and the progress of the Berry trial. Suming up, Zainey said: "... looking back, I don't recall any criticism that I had. He didn't have a whole lot to work with." (Docket No. 82-K-2515, Vol. II, Tr. 431) Zainey saw no indication whatsoever that Blanche was using drugs. On cross-examination, Zainey agreed that Blanche should have prepared Berry's mother for testifying, but noted that Blanche made sure she sat on the front row crying. According to Zainey, it was defendant Berry who decided that his mother should not take the witness stand.
Fred A. Blanche, III, denied the use of drugs during the period of February-October, 1978. However, he admitted being on probation. He said his past legal experience included one year as a law professor, three years as a prosecutor, work in the public defender's office and private practice. Blanche testified that he spoke to Mrs. Berry on numerous occasions and informed her she would be an important witness. Blanche admitted that he did not subpoena witnesses for either phase of the trial. However, he talked to Mr. McCrossen, the banker; a psychologist; and two people from Baton Rouge with whom Berry had lived. Blanche interviewed a priest to whom he was referred by the "Southern Cities' Defense Committee" but decided not to use him as a witness because he was so "radical and wild-eyed" (Docket No. 82-K-2515, Vol. II, Tr. 498). Blanche did not know of any witnesses that could or would have helped the case.

CONTENTIONS IN APPLICATION FOR WRIT OF HABEAS CORPUS
Filed as an application for post conviction relief pursuant to Rule XXVII of the Rules of Supreme Court of Louisiana, and LSA-C.Cr.P. art. 924, et seq., the application sets forth six claims for relief, some of which contain several arguments. All arguments are considered, but they have been regrouped for this opinion.
CLAIM ONEINEFFECTIVE ASSISTANCE OF COUNSEL
It is contended that attorney Blanche rendered ineffective assistance of counsel to defendant at trial of both guilt and penalty.

Argument OneFailure to Prepare
Defendant claims that Blanche failed to investigate and prepare for trial.

A. RUTH EAST
A specific dereliction is alleged with reference to Ruth East, who was known to the prosecution but not to attorney Blanche. East was outside the bank when the defendant fled the scene. According to her testimony at the habeas hearing, she would have testified that defendant appeared to be pale, in shock, like a "zoombie" (sic), and walked strangely.
Attorney Blanche's failure to learn about this witness indicates a deficiency in investigation and preparation. However, no prejudice to the defendant has been shown. The description which East would have given is consistent with the appearance of a *1011 person who has committed a homicide and been shot in an exchange of gun fire. The defense argues that East's testimony "... would have substantially enhanced the Jury deliberations to such an extent that a lesser verdict would have been probable or a sentence of life, without benefit, more appropriate... or conceivably returned a verdict of Not Guilty by reason of Insanity ...." (Docket No. 82-K-2515, Vol. I, Tr. 42) These contentions are unfounded. East's testimony does not suggest that her appearance would have had an impact on the jury favorable to the defendant, much less the dramatic effects suggested. Prejudice resulting from Blanche's failure to learn about East has not been shown.

B. FAILURE TO USE INDIGENT DEFENDER FUNDS
There is a dispute about whether indigent defender funds were available to attorney Blanche for employing experts or investigators. Assuming, arguendo, that these funds were available, there is no showing that expert or lay witnesses could have been discovered who would have bolstered the defense.
Defendant has not shown any favorable evidence which counsel should have produced. Fowler v. Parratt, supra. Compare United States v. Baynes, supra.

Argument TwoStipulation as to Chain of Evidence
Attorney Blanche stipulated the chain of evidence (this apparently related to certain physical evidence including bullet pellets). Absent a flaw in the chain, an attorney cannot be criticized for stipulating to the chain of evidence and saving trial time. There is no showing here of such a flaw.

Argument ThreeFilm
Defendant contends that attorney Blanche was ineffective in his opening statement, telling the jury he had discovered there was film of the episode at the bank. Blanche said:
"I found out today that there are films of what happened in the bank and if we can make them available to you, I'm going to try to do that. I think a film of the event, of course, would be perhaps more instructive than any witness could possibly be...." (Docket No. 66,060, Vol. II, proceedings Oct. 25, 1978, p. 17)
After making this statement, Blanche apparently discovered, according to Assistant District Attorney Leitz's new trial argument, that the film was not favorable to his client. Leitz said:
"... He viewed them and had ample opportunity to introduce them at trial and decided they were not in the best interest of his client...." (Docket No. 66,060, Vol. III, proceedings Nov. 30, 1978, p. 4)
This court has viewed the film and it would not have been helpful to defendant. It consists of a series of sequential photographs made by different bank cameras. The only picture of the actual shooting shows defendant Berry, gun in hand, pointing it at the falling victim.
Attorney Blanche used poor judgment in mentioning the film to the jury without having seen it, but he used good judgment in not showing it to the jury.
"A determination whether any given action or omission by counsel amounted to ineffective assistance cannot be divorced from consideration of the peculiar facts and circumstances that influenced counsel's judgment...." United States v. Decoster, 624 F.2d 196 at 203 (D.C., 1976).
No prejudice to the defendant has been shown.

Argument FourHandwritten Stipulation
Defendant argues that a handwritten stipulation admits that defendant fired first at the victim, Deputy Robert Cochran. This is not entirely accurate.
The handwritten stipulation was read to the jury by the trial judge, as follows:
"Alright, Ladies and Gentlemen of the Jury, I have before me a document which contains a stipulation to a set of facts agreed upon by the State and by the Defense Counsels. I'm going to read this to you and you're to accept these facts as *1012 having been proven, the same as if they had been proven to your satisfaction on the witness stand. You understand? O.K. `First, that the defendant,' that's the defendant, Berry, `went to the Metairie Bank on the morning of January 30th, 1978, with the intent of committing an armed robbery. Secondly, after entering the bank the defendant fired three shots, two of which struck and killed Deputy Robert Cochran. Thirdly, that Deputy Cochran did fire one shot with his service revolver which shot struck the defendant. And fourthly, a spent pellet was removed from the defendant and if Technician Ron Singer would testify, he would testify that the pellet recovered from the defendant was fired by Deputy Cochran's service revolver. And fifth and last, that the Detective recovered a spent 9 mm pellet from the defendant's home in Baton Rouge and Technician Singer would testify that pellet was fired by the same pistol which fired the pellet recovered from Deputy Cochran's body.' Now, you are to accept those five statements read by me just now as facts having been proven and established in the case. Do you all understand that?O.K. Would you file this of record please. Make that `Stipulation # 2' as title of the exhibit. Alright, who is your next witness?" (Docket No. 66,060, Vol. II, proceedings Oct. 25, 1978, pp. 66-67).
There is no indication of why defense counsel agreed to the stipulation. It is possible that the bank film was not introduced in evidence because of this stipulation. If the film was counsel's alternative, the stipulation was certainly the only competent choice.
One technique of criminal defense is to stipulate the worst features of a case rather than let the jury hear the evidence from live witnesses and prejudicial exhibits. The stipulation is an accurate representation of the facts of the event and does not, as defendant now contends, admit that defendant fired first. By entering the stipulation, attorney Blanche did not violate any duty to defendant. Further, there is no showing of prejudice.

Argument FiveFailure to Call Witnesses in Guilt Phase
It is contended that attorney Blanche was ineffective in failing to call any witnesses other than defendant in the guilt phase of the trial.
There is no showing of witnesses who could have given testimony favorable to the defendant.[3] The trial judge sumed up the case in ruling on the motion for new trial:
"The case you were faced with was a man who had a bullet from the dead deputy's gun removed from his body. He had several very credible eye witnesses pointing him out as the man who walked in the bank and shot the deputy. You had balistic evidence connecting his gun with his apartment and the deputy's death. This was a chain of evidence that was insurmountable. You did what I consider to be the best thing you could do under the circumstances ... and that was an attempt to getting a conviction of murder two rather than first degree murder. "You failed. The jury convicted him because of the impelling nature of the evidence, not because of your lack of diligence or ability as an attorney." (Docket No. 82-K-2515, Vol. I, Tr. 125-126)
Since there is no evidence of witnesses who could have helped the defense, no prejudice has been demonstrated.

Argument SixFailure to Call Witnesses in Sentencing Phase
Attorney Blanche testified that he interviewed several people concerning the sentencing phase of trial, including a priest, a psychologist, a medical doctor, a medical student, and Mrs. Carole Wunderlich in whose home Berry had lived. Attorney Blanche came to a reasonable conclusion that there were no witnesses who would be helpful to his client. While Mrs. Wunderlich would have testified that defendant was a good worker and a trusted friend, she would have had to admit that Berry smoked pot and had received an undesirable discharge *1013 from military service. It is difficult to second guess a defense attorney on a decision not to call a witness who has some favorable things to say but would corroborate other unfavorable things.
Attorney Blanche did not fail in his duty by not calling Mrs. Wunderlich.
As to defendant's mother, Blanche allegedly erred when he attempted to call her to the stand during the sentencing phase and she did not testify. The implication is that the attorney was remiss in not preparing Mrs. Berry to testify. Blanche said he had advised the mother prior to trial that she would be a key witness on behalf of her son. At the habeas hearing, Mrs. Berry denied that the attorney had ever interviewed her as to defendant's family history or character and indicated she was too overcome with emotion to testify.
Blanche should have prepared the witness. Because of their conflicting testimony, it is not clear what was done. According to attorney Zainey, it was Berry who decided that his mother should not take the stand (undoubtedly because of her emotional state). When Mrs. Berry could not testify, Blanche did the next best thing and had her seated on the front row, where she sobbed under the observation of the jury.
In connection with Mrs. Berry, defendant has not carried the burden of showing that attorney Blanche breached a duty which prejudiced his defense.

CONCLUSION AS TO CLAIM I.
The charge of ineffectiveness against attorney Blanche has been thoroughly ventilated by the application and hearing. The arguments and supporting evidence are without merit either because there was no breach of duty or no prejudice was shown. Faced with a devastating case against his client, attorney Blanche gave defendant Berry reasonably competent representation in both the guilt and sentencing phases of the trial.
CLAIM IINO LIST OF MITIGATING CIRCUMSTANCES TO JURORS
Defendant contends that the jury was not furnished with a copy of the statutory aggravating and mitigating circumstances as required by LSA-C.Cr.P. art. 905.3.
Since the jurors copied certain aggravating circumstances on the verdict form, the only question is whether they received a written list of the mitigating circumstances during their deliberations. The record is ambivalent. The trial judge's remarks indicate that the jury was probably given an initial list of the statutory aggravating and mitigating circumstances and later furnished copies for each juror. Although there was no proof at the evidentiary hearing that this was done, the burden of proving that relief should be granted rests with defendant. LSA-C.Cr.P. art. 930.2. This claim is unsubstantiated and therefore without merit.
CLAIM IIISUPPRESSION OF EVIDENCE
Defendant contends that the State suppressed exculpatory evidence in failing to produce witness East at the trial or disclose her knowledge to the defense. An assistant district attorney had interviewed East prior to trial. What Mrs. East knew was previously summarized in connection with the claim of ineffective counsel. Her testimony would not have been exculpatory. A wounded person leaving the scene of an attempted armed robbery would be expected to appear shocked and unsteady.
This claim lacks merit.

CLAIM IV: STATE SUPPRESSION OF FILM
Defendant contends that the state withheld and suppressed favorable evidence, consisting of pictures made by the bank's cameras. Although not examined by the trial judge at the habeas corpus hearing, the still photographs have now been reviewed. None of the pictures are at all exculpatory.
This claim is without merit.

CLAIM V: CLOSING ARGUMENT OF THE STATE
Defendant contends that he was deprived of due process, equal protection and effective *1014 assistance of counsel when the prosecutor alluded to appellate review of the sentence during closing argument.
Defense counsel's failure to object to the prosecutor's remarks is immaterial, since errors alleged in death cases are considered despite lack of objection. The finality of the death penalty outweighs procedural requirements during trial and appeal. Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); State v. Sonnier, 379 So.2d 1336 (La., 1980); State v. Felde, supra.
In connection with the original appeal, a per curiam denying rehearing previously considered this contention. In summary, the court held:
"Thus, the import of the closing argument was to tell the jury (1) that the statutory scheme, recognizing the seriousness of the consequences, provided adequate safeguards against arbitrary imposition of the death sentence, and (2) that weighing of all the considerations enumerated in the statute warranted imposition in this case. The argument did not serve to lessen the significance of the jury's role in the overall scheme." 391 So.2d 406 at 418.
In some other cases, for example, State v. Lindsey, 404 So.2d 466 (La., 1981), a death sentence has been reversed because speculation on a defendant's possible release from life imprisonment has been interjected into the jury's sentencing decision. However, Lindsey recognized a possible distinction between that case and Berry. See Footnote 15, 404 So.2d 466 at 487. In State v. Willie, 410 So.2d 1019 (La., 1982), the sentence was reversed because of argument covering the full gamut of appellate review in the United States.[4] Brief remarks concerning appellate review do not always require sentence reversal. See State v. Moore, 414 So.2d 340 (La., 1982) and State v. Mattheson, 407 So.2d 1150 (La., 1981). As pointed out in the Berry per curiam, the issue must be determined in each individual case by considering references to appellate review in context.
The prior per curiam correctly analyzed and disposed of this issue.[5]

CLAIM VICONCESSION OF GUILT
Defendant contends that he was deprived of due process, equal protection and effective counsel because of certain remarks in Blanche's opening argument to the jury, as follows:
"From the very beginning we will concede to you or I will concede to you on behalf of Ben Berry that he did intend to rob a branch of the Metairie Bank....
* * * * * *
"I'm not suggesting to you that he is innocent of a crime, but I'm asking you to presume, at least at this point, that he may be innocent of the crime of First Degree Murder." (Docket No. 66,060, Vol. II, proceedings Oct. 25, 1978, pp. 13, 17-18).
It is argued that Blanche admitted his client's guilt. This is incorrect. The first remark is a comment on an obvious and inescapable fact; counsel may have been trying to establish his candor with the jury. The second remark forms part of the theme *1015 of the opening statement: Berry, although culpable, was not guilty of First Degree Murder. Narrowing the presumption of innocence claim to the charge of first degree murder was intended to direct the jury toward a lesser verdict. Read in context these statements are not violations of the attorney's duty. United States v. Decoster, supra.
This claim lacks merit.

CONCLUSION
For the reasons assigned, the decision of the trial court denying the application for writ of habeas corpus is affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs with reasons.
CALOGERO, Justice, concurring.
I disagree with the majority's relying on the previous treatment (on appeal) of the issue concerning the prosecutor's closing argument to the jury and his references to appellate review. At that time, this Court had not yet taken a majority position that such arguments could ever require reversal of the sentence. It has only been since then, starting with State v. Lindsey, 404 So.2d 466 (La.1981), that a majority of this Court has determined that such arguments can require a reversal of the sentence because they inject arbitrary factors into the jury's considerations.[1]
However, after considering this case with those that have since been rendered, I am of the view that the instant case is more on point with those not requiring reversal than with those in which it was deemed necessary to reverse the sentence. I therefore concur.
DENNIS, Justice, concurring.
I agree with the majority's result, but the opinion leaves room for misimpression concerning the application of the proper standards for evaluating ineffective assistance of counsel claims in capital cases.
The majority opinion appears to utilize the two-pronged test of McQueen v. Swenson, 498 F.2d 207 (8th Cir.1974) to dispose of all of the claims presented by this petitioner, regardless of whether they relate to lack of trial preparation or to substandard conduct during the guilt and penalty phases of the trial. The McQueen test is appropriate for use in resolving those claims of ineffective assistance grounded in lack of trial preparation, but the second prong of the McQueen test, particularly as applied in the majority opinion, represents too stringent a burden to be placed fairly upon a defendant for other types of ineffective assistance of counsel claims.
As the majority acknowledges, in the penalty phase of a capital case we have previously held that the standard to be applied is that of a reasonably competent attorney acting as a diligent, conscientious advocate for the defendant's life. State v. Myles, 389 So.2d 12, 28 (La.1979). The majority's statement that "the initial burden of proof is on the defendant, but once met, he is entitled to a new trial unless the court can say beyond a reasonable doubt the error was harmless," is a better expression of the proper application of the burden of showing prejudice for claims of ineffective assistance of counsel, other than for those involving preparation for trial.
It is unclear from the majority opinion which test is applied to each claim of ineffective assistance. Nevertheless, when the correct standards are applied to the evidence in this case, I conclude that Benjamin Berry marginally received the reasonably competent assistance of an attorney acting as a diligent, conscientious advocate for his life. Therefore, I respectfully concur.
NOTES
[*] Judge Cecil Cutrer of the Court of Appeal, Third Circuit, participated in this decision as Associate Justice Ad Hoc in place of Blanche, J., recused.
[1] The Eighth Circuit had historically followed the "mockery of justice" standard and effectively abandoned it in McQueen without specifically deciding to do so. The later case of United States v. Easter, 539 F.2d 663 (8 Cir., 1976) equates failure to exercise the customary skills and diligence of a reasonably competent attorney with reducing the proceedings to a "mockery of justice".
[2] This is consistent with prior Louisiana law which has recognized that a complaint of ineffectiveness must be coupled with a showing by defendant of prejudice. State v. Landrum, 307 So.2d 345 (La., 1975); State v. Kenner, 336 So.2d 824 (La., 1976); State v. Bell, 346 So.2d 1090 (La., 1977); State v. Seiss, 428 So.2d 444 (La., 1983). Two Louisiana cases have recently described effective assistance as "... not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." State v. Ratcliff, 416 So.2d 528 (La., 1982) quoting from U.S. v. Fruge, 495 F.2d 557 (5 Cir.1974). See Herring v. Estelle, 491 F.2d 125 (5 Cir.1974) and MacKenna v. Ellis, 280 F.2d 592, cert. denied 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). See also State v. Seiss, supra. The quoted definition is probably the same as competent representation. The difficulty is in determining what in a given case is "reasonably effective" and "competent". The McQueen case provides a workable method of analysis.
[3] Ruth East's testimony has been considered earlier in this opinion.
[4] The author dissented from reversal of sentence in State v. Willie, supra.
[5] In Blanche's own closing argument, he told the jurors, in essence, that: Berry has some good in him; they should give him the opportunity to live; each should make an independent decision; life in prison would be a sufficiently horrible punishment; Berry is remorseful; he would remain in jail the rest of his life; they were not required to impose the death penalty; Berry is relatively young and not a career criminal; the death penalty should be reserved for such horrible crimes as mass murder; Berry and the victim exchanged shots; Berry will grieve forever for his crime; the crime happened quickly without deliberation; the victim cannot be restored to life; "[o]nly the slightest compassion is required" to oppose the death penalty; and that they should find some compassion for Berry. (Docket No. 66,060, Vol III, proceedings Oct. 26, 1978, p. 19).

State v. Myles, 389 So.2d 12 (La., 1980) held that a perfunctory closing argument in the sentencing phase of a death case amounted to ineffective assistance of counsel. In contrast to Myles, supra, Blanche's argument here did not fall below the standard of competency constitutionally required.
[1] See, State v. Sawyer, 422 So.2d 95 (La.1982); State v. Robinson, 421 So.2d 229 (La.1982); State v. Jordan, 420 So.2d 420 (La.1982); State v. Brown, 414 So.2d 689 (La.1982); State v. Moore, 414 So.2d 340 (La.1982); State v. Willie, 410 So.2d 1019 (La.1982); and State v. Monroe, 397 So.2d 1258 (La.1981).