PER CURIAM.
11 Motion granted; writ denied. On May 29, 1995, relator shot and killed the manager of a Pizza Hut in Shreveport in the course of an armed robbery. He also shot two other employees but they survived. After taking the money from the register, relator forced the three victims at gunpoint into the cooler in the rear of the building. He ordered them to lie face down on the floor and then shot each victim in the head.
Relator was identified by the surviving victims, he admitted his involvement to an associate, and he confessed to police. In the face of overwhelming evidence, defense counsel did not contest relator’s guilt but instead focused on presenting a case in mitigation. Relator’s mother, two grandparents, and two aunts testified about relator’s traumatic childhood and extreme mood swings. Evidence was presented that he received psychiatric inpatient treatment as a child and was prescribed an antipsychotic. In the opinion of defense experts, relator was likely sexually abused by a babysitter and he may have suffered umbilical cord asphyxia at birth. These experts diagnosed relator with a personality disorder that featured | ^extreme mood swings, poor impulse control, and distorted perceptions of reality, which the experts opined caused him to commit the criminal acts at the Pizza Hut.
Relator was found guilty of first degree murder and sentenced to death. This Court affirmed the conviction and sentence and direct review is complete. State v. Tyler, 97-0338 (La.9/9/98), 723 So.2d 939, cert. denied, Tyler v. Louisiana, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999). In 2001, relator filed his first application for post-conviction relief in which he compláined of ineffective assistance of counsel during the guilt phase of trial. He did not obtain relief and those claims were fully litigated through the state courts. State v. Tyler, 06-2339 (La.6/22/07), 959 So.2d 487. In 2009, relator filed a second application for post-conviction relief in which he presented-30 additional claims, including ineffective assistance of counsel, suppression of evidence, juror misconduct, and various claims under the Eighth Amendment. The District Court denied some of these claims summarily and denied the remainder after conducting an evidentiary hearing. Relator sought review and this Court granted in part and instructed the District Court to conduct an additional evidentiary hearing on relator’s claim jurors improperly consulted a Bible during deliberations. State v. Tyler, 13-0913 (La.11/22/13), 129 So.3d 1230. In that order, this Court also stated:
Consideration of reldtor’s claims • that counsel was ineffective for failing to adequately investigate possible brain damage and failing to have his experts explain the side-effects of the anti-psychotic medication he was taking during trial is pretermitted without' prejudice pending resolution- of the evidentiary hearing at the district court.
Id., 13-0913, pp. 1-2, 129 So.3d at 1230.
On remand, the District Court conducted the evidentiary hearing and heard the testimony of the 10 still-living jurors and the two deputies who oversaw their sequestration before denying relief. The District Court also expressed concern that the Capital Post-Conviction Project of Louisiana (CPCL) had harassed jurors to Isobtain questionable evidence in support of unfounded claims. This Court denied *680 writs with two concurrences echoing those concerns about the conduct of the CPGL. State v. Tyler, 15-0093 (La.5/22/15), 171 So.3d 922. With the claim of juror misconduct fully litigated, relator filed-a'.motion for clarification seeking the status of Ms claims counsel failed to investigate the possibility he has brain damage and failed, to present evidence to the jury regarding, the side-effects of antipsychotic medication he took during trial. Relator's motion is granted to clarify that the merits of these claims have been reviewed and the writ denied for the reasons that follow in addition to those expressed ‘by the District Court.
Relator contends he was misdiagnosed by defense- experts as suffering from- á personality disorder rather than schizophrenia and he argues in closely interrelated claims that counsel was ineffective for failing to: ensure the accuracy of the- diagnosis and by failing to obtain a neuropsy-chological assessment. As correctly char-acterizéd by the- state, the former claim' is not so much a complaint about counsel as a complaint about the defense experts who diagnosed him. See Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir.1992) (“[Tjhere is no separately-cognizable claim of ineffective assistance of expert, witnesses ..., the constitutionally- deficient performance must be-that of counsel, in obtaining the-psychiatric examinations or presenting the evidence at trial for example, not that of the -psychiatrist or psychologist in failing to identify every possible malady ......”); see also State v. Frogge, 359 N.C. 228, 242-46, 607 S.E.2d 627, 635-37 (2005) (collecting cases finding defendant does not show ineffective assistance merely by presenting a new expert post-conviction whose diagnosis is different than that used at trial),
The latter claim is based on a letter written by defense counsel to the defense’s psychiatrist/neurologist in preparation for trial suggesting the expert Robtain imaging' to determine if relator suffers residual brain damage resulting from chronic drug abuse. Such imaging was evidently not obtained, or if it was it was not used and does not appear in the record. Relator argues counsel inexcusably erred under the first prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) by failing to follow up on his letter requesting brain imaging. Relator’s claim of prejudice, however, is tenuous. Relator’s neuropsychologist, hired post-conviction, opined at the eviden-tiary hearing that imaging' might have shown ‘ anatomical' abnormalities which could have resulted from umbilical cord asphyxia or chronic substance abuse which discovery should have prompted a neurop-sychological assessment which would have revealed relator’s deficits in executive functioning and cognitive flexibility (resulting in his inability to inhibit his behavior), poor visual and verbal memory, and paranoia and delusional belief?. •
However, relator has presented nothing showing he in fact' has any anatomical abnormalities or, assuming they exist, that they were caused by umbilical cord asphyxia or chronic substance abuse. Furthermore, the deficits this expert'proposes would have been found by neuropsychological assessment Overlap considerably with those previous found by other experts and presented to the jury, i.e. that relator has poor impulse control, and difficulty navigating stressful situations brought on by perceptual distortions and a tendency to rely on delusional inner thought processes. While relator contends the jury would have 'been more sympathetic if informed these deficits stemmed from organic brain dysfunction, the jury was informed relator is severely mentally disturbed as a result of a biologically based disorder. Thus, the *681 jury heard evidence of his disorder (albeit a ,different one than posfc-eonviction counsel would prefer) as well as the substantially same impairments described by the post-conviction expert. .
IsA defendant at the penálty phase of a capital trial is entitled to the assistance of a reasonably competent attorney acting as a diligent, conscientious advocate for his life, State v. Fuller, 454 So.2d 119, 124 (La.1984); State v. Berry, 430 So.2d 1005, 1007 (La.1983); State v. Myles, 389 So.2d 12, 28 (La.1980) (on reh’g); see also Burger v. Kemp, 483 U.S. 776, 788-89, 107 S.Ct. 3114, 3122-26, 97 L.Ed.2d 638 (1987), and counsel’s dereliction may warrant relief even if the defendant has been convicted' of a particularly egregious crime. See, e,g., Williams v. Taylor, 529 U.S. 362, 368, 120 S.Ct. 1495, 1500, 146 L.Ed.2d 389 (2000) (committed two assaults on elderly women, leaving one in a persistent vegetative state) and Rompilla v. Beard, 545 U.S. 374, 377, 125 S.Ct. 2456, 2460, 162 L.Ed.2d 360 (2005) (stabbed victim repeatedly before setting fire to his body). To' show ineffectiveness as a result of counsel’s failure to present mitigating evidence, a petitioner must establish that: (1) counsel failed to undertake “a reasonable investigation [which] would' have uncovered mitigating evidence;” and (2) failing to put on the available mitigating evidence “was not a tactical decision but reflects a failure by counsel to advocate for his . client’s cause;” (3) which caused “actual prejudice.” State v. Hamilton, 92-2639, p. 6 (La.7/1/97), 699 So.2d 29, 32 (citing State v. Brooks, 94-2438 (La.10/16/95), 661 So.2d 1333 and State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272). Relator, here shows no actual prejudice resulting from counsel’s alleged failure to follow-up on his letter requesting brain imaging. Cf. Wesbrook v. Thaler, 585 F.3d 245, 253 (5th Cir.2009) (finding no reasonable probability that the , penalty phase outcome would have been different with the omitted evidence of defendant’s frontal lobe damage because it was largely duplicative of other testimony). ■
Relator -also contends counsel was ineffective because he did not elicit from the defense’s expert ;witness that he was being ' treated with an antipsychotic | ¿medication that could cause him to exhibit flat affect and a 'stiff demeanor. This claim is' grounded on the statement of a defense investigator who testified at the evidentiary hearing she ' had expressed concern about relator’s demeanor pretrial, as well as on defense counsel’s strategy in asking relator to take notes during trial- and otherwise pérform behaviors intended to make him appear animated and engaged. To prevail' on this claim, relator has the very high burden under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) of showing prejudice to the extent the trial was rendered unfair and the verdict suspect.
Relator relies to a great extent on. Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). In Riggins, the Supreme Court found that the forcible administration of an extremely high dosage of the antipsychotic Mellaril to a defendant denied him his right to a full and fair trial. In reaching that conclusion, the Supreme Court commented:
We also are persuaded that allowing Riggins to present expert testimony about the effect of'Mellaril on his demeanor did nothing to cure the possibility. that the substance of his own testimony, his interaction with counsel, or his comprehension at trial were compromised by forced administration of Mel-laril.. Even, if (as the dissent argues, post, at 1821-1822) the Nevada Supreme Court was right that expert testimony allowed jurors to assess Riggins’ de *682 meanor fairly, an unacceptable risk of prejudice remained. See [Riggins v. State ] 107 Nev., [178] at 181, 808 P.2d, [535] at 537-538 [(1991)].
Riggins, 504 U.S. at 137-38, 112 S.Ct. at 1816. A concurrence further commented, “At all stages of the proceedings, the defendant’s behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall- impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial.” Riggins, 504 U.S. at 142, 112 S.Ct. at 1819 (Kennedy, J., concurring). Riggins did not address any issue of ineffective assistance of counsel. A federal district court has rejected a closely similar claim involving an antidepressant medication:
_JjEven if I were persuaded that trial counsel performed deficiently in failing to discover and address the effect of Johnson’s increased Zoloft dosage upon her demeanor, I cannot find that Johnson was prejudiced by that deficiency. Strickland, 466 U.S. at 691-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (an ineffective assistance of counsel claim also requires proof of prejudice, that is, a showing of a reasonable probability that the outcome of the proceeding would have been different, but for counsel’s unprofessional errors); Gianakos, 560 F.3d at 821 (“ ‘An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.’ ” (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052)). For many of the same reasons that a non-testifying defendant’s flat or disengaged demeanor may be significant in the eyes of a jury, a non-testifying defendant’s inappropriate reactions to evidence, witnesses, and her circumstances may also be significant — and just as detrimental. See, e.g., Riggins, 504 U.S. at 142, 112 S.Ct. 1810 (Kennedy, J., concurring). Johnson’s assertions of prejudice ignore the two-edged sword that her demeanor problems presented: An overly-reactive demeanor posed just as much if not more of a threat to her defense as a flat demeanor. If anything, I find that Johnson’s change in demeanor was to her advantage, not to her detriment. Cf. Shepherd, 284 F.3d at 967 (recognizing that a defendant’s demeanor in the courtroom could harm his case in the eyes of the jury). Indeed, because I faced Johnson head on throughout the trial, while the jurors saw her in profile, sometimes partially obscured by her trial counsel, I was in a better position even than the jurors to observe her demeanor, and I did not see anything sufficiently inappropriate about it once the merits phase began to raise concerns that she was prejudiced by trial counsel’s failure to address it. There is also simply no evidence that Johnson’s increased Zoloft dosage made her incapable of showing remorse or any other appropriate demeanor, where Johnson did not testify at the § 2255 hearing and the record does not include any other evidence that I find shows that she was remorseful. See, e.g., Trial Transcript at 3968-76 (my comments, during a conference on mitigation phase Jury Instructions, that I did not see any evidence of remorse).
Also, in light of the overwhelming evidence presented of Johnson’s involvement in the murders of five people, including two young girls, I cannot say that there is any reasonable probability that the outcome of the merits phase (or for that matter, the mitigation phase) would have been any different had trial counsel offered evidence about Johnson’s medication and its effect on her demeanor at the time of trial or had trial *683 counsel requested and received an instruction on the effect of Johnson’s medication on her demeanor at the time of trial. This is so, because such evidence would not have changed the evidence of Johnson’s involvement in the killings nor would it have mitigated her culpability at the time of the killings. Strickland, 466 U.S. at 691-92, 104 S.Ct. 2052 (proof of prejudice requires a showing of a reasonable probability that the outcome of the proceeding would have been different, but for counsel’s unprofessional errors).
Johnson v. United States, 860 F.Supp.2d 663, 807-08 (N.D.Jowa 2012). We find the federal district court’s reasoning persuasive. Relator in the present case did not testify. Although an investigator testified his affect was flat and his demeanor stiff pretrial, it was not established that he was unable to demonstrate remorse at trial because of the administration of 10 mg of Mellavil, which dose is far lower than the 800 mg administered to defendant in Rig-gins.[1] Furthermore, the evidence against relator was overwhelming and evidence that his demeanor was potentially affected by 10 mg of Mellaril would not have changed the evidence of his involvement in the killings nor would it have mitigated his culpability at the time of the killings. Strickland, 466 U.S. at 691-92, 104 S.Ct. 2052 (proof of prejudice requires a showing of a reasonable probability that the outcome of the proceeding would have been different, but for counsel’s unprofessional errors).
This Court’s review has revealed the District Court correctly dismissed each of these claims for post-conviction relief and no relief is warranted. Relator has now fully litigated two applications for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4. Notably, the Legislature in 2013 La. Acts 251 amended La.C.Cr.P. art. 930.4 to make the procedural bars against successive filings mandatory. Relator’s claims have now been fully litigated in state collateral proceedings in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless relator can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his | aright to state collateral review. The District Court is ordered to record a minute entry consistent with this per curiam.
JOHNSON, C.J., would grant.

. Relator was also administered 100 mg of the tricyclic antidepressant Sinequan. Defendant in Riggins was also administered the anti-seizure drug Dilantin.