479 So.2d 948 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Roy HARTMAN, Defendant-Appellant.
No. CR84-499.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
Rehearing Denied January 10, 1986.
*949 Darrell J. Hartman, Roy Hartman, Abbeville, for defendant-appellant.
Calvin E. Woodruff, Jr., Asst. Dist. Atty., Abbeville, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.

HISTORY OF THE CASE
Defendant, Roy Hartman, was charged by grand jury indictment on July 1, 1982, with the second degree murder of Dean Hohn, a violation of La.R.S. 14:30.1. On October 12, 1982, defendant was formally arraigned and entered a plea of not guilty. On June 22, 1983, defendant withdrew his former plea of not guilty and entered a plea of "not guilty and not guilty by reason of insanity." The defendant properly waived trial by jury and was tried by a judge and found guilty of manslaughter, a violation of La.R.S. 14:31. On November 2, 1983, defendant was sentenced to serve 15 years at hard labor. LSA-C.Cr.P. art. 893.1 mandates that the first five be served without benefit of parole, probation or suspension of sentence. Defendant now seeks an appeal from his conviction and sentence.
Several attorneys have represented the defendant. Caliste Beard withdrew as counsel of record on June 4, 1983. Trial began on June 22, 1983, at which time defendant was represented by Nolan Edwards. J. Daniel Rivette filed assignments of error in the trial court. Daniel J. Hartman has filed an appellate brief. A pro se brief was also filed by the defendant Roy Hartman on his own behalf. Since the attorney filing the assignments of error at the trial court did not write the appellate briefs, the assignments of error filed in the trial court do not correspond exactly to those found in the briefs on appeal. The assignments, however, cover the same general issues. The errors which were filed in the district court pursuant to LSA-C.Cr.P. art. 844 are as follows:
ASSIGNMENTS OF ERROR
1. The trial court erred in that the State failed to prove all of the requisite elements of the crime charged and especially:
(a) Failed to carry its burden of proof that the defendant did not act in self-defense;
(b) Failed to prove specific intent.
2. The trial court erred because the State failed to comply with Brady v. Maryland insofar as it possessed evidence it knew to be exculpatory and therefore it was under an affirmative duty to disclose. (This assignment of error was not briefed by the defendant-appellant. It is therefore deemed *950 abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).)
3. The trial court erred in finding the arresting officers adequately complied with Miranda (to which objection was timely made and therefore it is submitted the hearsay testimony of the police officers should have been excluded).
4. The trial court erred in denying a motion for directed verdict.
5. The trial court erred because the denial of the motion for post-verdict judgment of acquittal was improper insofar as:
(a) The State failed to carry its burden of proof that defendant did not act in self-defense;
(b) The trial judge applied the wrong burden of proof to this circumstantial case;
(c) The circumstantial evidence failed to exclude every reasonable hypothesis of innocence;
(d) The trial judge erred in according greater weight to negative testimony of police officers than the positive testimony of defendant, Alton Toups and Dr. Thomas Latour.
6. The trial court erred because the denial of the motion for new trial was erroneous for each of the reasons articulated therein.
7. The trial court erred because in sentencing the defendant the court failed to comply with La.C.Cr.P. art 894.1 and sentence was excessive and disproportionate.
8. The trial court erred in following the guidelines under La.C.Cr.P. art. 893.1 which is unconstitutional as it:
(a) Makes no provision for notice to the accused;
(b) Constitutes an arbitrary and capricious judgment in view of the Second Amendment right to bear arms;
(c) Violates La.Const. art. 3, Sec. 12 (10).
(This assignment of error, as it relates to constitutional claims, is also deemed abandoned since it was not briefed on appeal. State v. Dewey, supra.)

FACTS
Roy Hartman testified that on June 28, 1982, the cash register of the Pub, a bar which he owns in Abbeville, had been forced open and money stolen from it. Defendant further testified that since there was no sign of forcible entry, he thought the robbery had been an "inside job" perpetrated by Dean Hohn. Hohn had been employed at the Pub for two weeks and was residing at the defendant's living quarters adjacent to the bar. On the day of the shooting, Dean Hohn drove to Lafayette with Randy Janet and Linda Mayard. They returned to Abbeville about 5:00 p.m. Mayard testified that when they returned, Hartman indirectly accused Hohn of the robbery. Hohn and the others agreed to meet again at 7:00 p.m. When Randy Janet returned to Hartman's residence at 7:00 p.m. he honked several times. Dean Hohn came "flying out of the door" and landed on the ground. When Randy Janet ran over to Hohn, he told Janet that Hartman had shot him. The police and ambulance were then summoned. The victim expired as a result of hemorrhaging and shock caused by the bullet wound.
Hartman testified that he had fired Hohn several days before the incident because he had been involved in several fights. He nevertheless permitted Hohn to remain in the defendant's living quarters to recuperate from injuries acquired during a fight. When Hartman accused the victim of the robbery, the victim told him he would treat the defendant in the same fashion that he had treated someone he had problems with in jail. Hartman further stated that as the victim was putting his clothes into a suitcase he saw a shiny object. As he was turning around to reach for his rifle, his glasses fell off. (According to Hartman's doctor, his eyesight is poor without eyeglasses.) The defendant stated that when he found the rifle he was able to discern the victim's figure, saw a shiny object and a flash, and fired from the hip.
*951 According to the doctor performing the autopsy, the bullet entered the body from the back. The officers who investigated the incident claimed the defendant repeatedly stated: "I'm not going to let someone from Illinois rob me." They also testified that directly after the shooting they searched the premises for the alleged shiny object for approximately thirty minutes and were unable to find one. The defendant's brother-in-law, Alton Noel, called the police the day after the incident and claimed that he had found a silver comb under a rug where the body had fallen.
Dr. Latour, who had been seeing Hartman for psychiatric reasons, testified in his behalf. He explained that the defendant had become paranoid as a result of being assaulted in 1981. It was his opinion that in the situation described at trial, Hartman would be more likely to feel that his life was being threatened.
After viewing the above evidence the trial court concluded that Hartman did not act in self-defense because (1) the bloodstained metal comb was not found at the scene by investigating officers; (2) the defendant admitted the victim appeared to be moving away from him; and (3) the victim had been shot in the back. The trial judge found the fact that the defendant suspected the victim of theft and the fact that the victim threatened the defendant "would deprive an average person of his cool reflection, self control." He therefore found the defendant guilty of manslaughter.

SUFFICIENCY OF THE EVIDENCE
Assignments of Errors Nos. 1, 4 and 5 were treated as Errors Nos. 1 and 3 in defendant's appellate brief. Defendant alleges that the trial court erred in that the State failed to carry its burden of proving that the defendant did not act in self-defense.
LSA-R.S. 14:20 reads in pertinent part as follows:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...."
This Court in State v. Sylvester, 438 So.2d 1277 at 1281 (La.App. 3d Cir.1983), writ den., 444 So.2d 606 (La.1984), discussed self-defense as follows:
"A defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue because the State bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Brown, 414 So.2d 726 (La.1982)."
Circumstantial evidence is also involved in the case before us. Pursuant to LSA-R.S. 15:438 the rule concerning circumstantial evidence is: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
The fact that the metal comb was not found by the investigating officers, the fact that Hartman repeatedly told the officers that he would not let anyone rob him, and the fact that the victim was shot in the back would indicate that the defendant did not act in self-defense. The evidence presented by the state would exclude every reasonable hypothesis of innocence. Thus, the trial court did not err in finding that the defendant did not act in self-defense. This assignment of error lacks merit.

ADMISSIBILITY OF INCULPATORY STATEMENTS
Assignment of Error No. 3 was treated as Error No. 2 in defendant's appellate brief. In this assignment of error the defendant claims that the trial court erred in admitting evidence of numerous inculpatory statements of the defendant over defense objection. He claims that certain statements made by the defendant should have been suppressed because the arresting officer failed to inform defendant of his Miranda rights prior to questioning him and later, Officer Broussard failed to make *952 defendant aware of his right to stop answering questions at any time, thereby relying upon his Fifth and Sixth Amendment rights.
From the record it appears that defense counsel did not specifically object to the admissions of the statements at the time they were made pursuant to La.C. Cr.P. art. 841. The defense counsel, however, did object to the trial court holding that the statements were voluntary. Although the defendant's complaints were not properly preserved for appeal, they will, nevertheless, be addressed. After the officer testified concerning his investigation, the State submitted the issue of free and voluntary statements. The trial court held that the statements were free and voluntary. The trial court's conclusions on the credibility and weight of testimony relating to the voluntariness of a statement will not be overturned on appeal unless they are not supported by the evidence. State v. Dewey, 408 So.2d 1255 (La.1982). In the case before us the decision was supported by evidence.
Officer Broussard who investigated the incident testified that when he arrived at the Pub he did not initially see Roy Hartman and had no reason to suspect him of anything. Officer Broussard testified that no one indicated to him that Hartman was a suspect. When the officer asked Hartman if he knew what happened, he responded: "I shot the thief." At this point the officer ceased questioning Hartman.
In State v. White, 399 So.2d 172 (La. 1981), the court held that Miranda warnings were not necessary in certain circumstances. On page 174 the court stated:
"Miranda warnings are not a prerequisite to admissibility of statements taken by officers during non-custodial, general on-the-scene investigations, conducted to determine the facts and circumstances surrounding a possible crime, absent a showing that the investigation has passed the investigatory state and has focused on the accused. State v. Weeks, 345 So.2d 26 (La.1977); State v. Brown, 340 So.2d 1306 (La.1976) [, writ den., 366 So.2d 564 (La.1979.)]
In Hartman's case the investigation had not yet focused on the accused. In asking the defendant what happened, the officer was merely making a "general on-the-scene" investigation, thus Miranda warnings were not necessary.
The defendant claims that Officer Broussard did not make him aware of his right to stop answering questions at any time, thereby relying upon his Fifth and Sixth Amendment rights. When he came back to talk to Mr. Hartman, Officer Broussard read from a card the following (as reflected in the transcript):
Miranda warnings:
"You have the right to remain silent. Anything you say can and will be used against you in a court of law.
"You have the right to talk to a lawyer and have him present with you while you're being questioned.
"If you cannot afford to hire a lawyer, one will be appointed to represent you before any questions, if you wish.
"You can decide at any time to exercise these rights, not after any question or making a statement. (Emphasis added)
"After the warning, and in order to secure a waiver, the following questions should be asked and an affirmative reply secured to each of the questions:
"Do you understand each of these rights I've explained to you ..."
After the officer read the rights, the defendant again stated: "I shot the thief." The defendant focuses on the statement "he could decide at any time to exercise these rights, not after any questions or making a statement." He claims that this statement did not clearly and unambiguously inform defendant of his right to cut off the questioning at any time and to rely upon his constitutional rights. He claims the warnings erroneously implied that the defendant could not invoke his constitutional rights after making a statement.
*953 Since defense counsel did not object to the introduction of these statements at the time they were made, it is uncertain whether the police officer actually literally stated the above as transcribed or whether there was an error in the trial transcript. Although the officer's reading of the Miranda rights may have been erroneous, and the statement made by the defendant inadmissible, the error was harmless. The identical statement, "I shot the thief" was made by the defendant before the Miranda warning and was admissible, as discussed previously. Therefore, these assignments of error lack merit.
On the day this case was scheduled for oral argument the State filed a brief. With reference to the portion of the Miranda warning under attack as being inaccurate, the State suggests that this portion of the warning was not correctly transcribed but correctly stated at trial. The State further suggests that if this court should deem the matter material, we should defer ruling on the case until such time as the trial court "has conducted a hearing to determine the necessity of correcting the transcription error." We need not consider whether such a procedure is authorized or appropriate. Our disposition as set forth above takes care of the matter.

INEFFECTIVENESS OF COUNSEL
This error does not appear in the original "Assignment of Errors" filed in accordance with LSA-C.Cr.P. art. 844. It is discussed as Error No. 4 in defense attorney's appellate brief and in the pro se assignment of error and brief of the defendant himself.
The defendant now claims that the attorneys who represented him before and during the trial were ineffective because no pretrial motions to suppress inculpatory statements were filed. The defendant did not file an assignment of error in the trial court addressing ineffectiveness of counsel. This claim is properly raised by writ of habeas corpus in the trial court, however since the record contains sufficient facts to decide the issue and in the interest of judicial economy, the issue will be considered. State v. Seiss, 428 So.2d 444 (La.1983).
Claims of ineffective assistance of counsel were discussed in State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983), as follows:
"To establish a claim of ineffective representation, the defendant must demonstrate that counsel did not meet the level of competency `normally demanded' in criminal cases. An adequate defense must be based on `informed professional deliberation.' McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Felde, 422 So.2d 370 (La.1982). [Cert. den., 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed. 290 (1983).] Effective assistance of counsel does not mean `errorless' counsel, or counsel which may be judged ineffective on mere hindsight, but counsel `reasonably likely to render and [actually] rendering reasonably effective assistance.' State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982)."
The analysis of a claim for ineffective counsel first entails an inquiry of whether counsel violated some duty to the client. The second inquiry is whether the violation, if any, prejudiced the client in the defense of his case. State v. Berry, 430 So.2d 1005 (La.1983).
Although the trial counsel may have failed to file a pretrial motion to suppress inculpatory statements, the first statement made by the defendant of Officer Broussard would nevertheless have been admissible. The possible neglect of counsel, thus would not cause the defendant any prejudice.
In a pro se assignment of error the defendant raised the issue of ineffectiveness of counsel. In State v. Willis, 438 So.2d 605 (La.App. 3d Cir.1983), the court considered the defendant's pro se assignments of error in addition to the formal assignments of error filed in the trial court by defense counsel. Hartman questions the effectiveness of counsel, Nolan Edwards, now deceased, and Caliste Beard.
*954 Defendant alleges that Mr. Beard failed to investigate the factual basis for the defendant's claim of self-defense by not filing pretrial discovery motions and by not obtaining tests of a "rake" with which the defendant asserted the victim threatened him. Defendant claims Mr. Beard failed to investigate the victim's criminal past and neglected to conduct a fingerprint analysis of defendant's cash register to link the victim to the theft. Defendant further asserts that Mr. Edwards failed to adequately interview and prepare witnesses, to accurately inform defendant of the possible penalty faced, and to request a lesser included charge of negligent homicide.
Filing the motions to produce exculpatory evidence and other pretrial discovery motions, investigating the victim's criminal past, and conducting a fingerprint analysis of the register constitute a strategy as to the issue of self-defense. Failure to employ a strategy which might have been successful, however, does not constitute ineffective assistance of counsel. State v. Felde, supra.
The defendant also claims counsel failed to request a lesser charge of negligent homicide. The defendant was charged with second degree murder but found guilty of manslaughter. The trial judge made it clear that he found the decision between second degree murder and manslaughter a very close one. Under the circumstances it is unlikely that the court would have considered a lesser charge. Therefore, counsel's failure to request a lesser charge of negligent homicide in this bench trial was not prejudicial.
Defendant further alleged that counsel failed to accurately inform defendant of the possible penalty he faced. Defendant claims that Mr. Edwards told defendant he could "possibly get off with zero years." This statement does not necessarily refer to the penalty but more likely to the finding of guilt or innocence. If the defendant had been found not guilty, he would have served "zero years."
Mr. Edwards and Mr. Beard do not appear to have violated any duty to the defendant. The record shows that at trial Mr. Edwards thoroughly examined the witnesses, made objections to the prosecutions, and filed a motion for directed verdict which was denied. These attorneys cannot be considered ineffective. However, if counsel may be deemed to have breached any duty, the defendant, nevertheless, did not show the breach prejudiced him.
Defendant also contends that he received ineffective counsel during sentencing. This claim is based on the fact that his attorney stood mute at sentencing, failing to make any presentation and failing to call the court's attention to mitigating factors.
Assuming the truth of these allegations, the defendant must also prove that he has been prejudiced by his attorney's behavior. State v. Berry, supra. Since we find that Hartman's sentence is not excessive, he has likewise failed to show prejudice. This error is without merit.

EXCESSIVE SENTENCE
Assignment of Error No. 7 was treated as Error No. 5 in defendant's appellate brief.
Article 1, Sec. 21 of the 1974 Louisiana Constitution prohibits excessive sentencing. In State v. Sepulvado, 367 So.2d 762 (La.1979), the court held that a sentence can be excessive even if it falls within the statutory limit. LSA-C.Cr.P. art. 894.1 lists factors that a trial judge is required to consider and articulate in order to particularize a sentence and to make review possible. A sentence may be vacated and a case remanded for re-sentencing where the reasons for an apparently serious sentence in relation to the particular offender and the actual offense committed do not appear in the record. State v. Cox, 369 So.2d 118 (La.1979); State v. Jones, 381 So.2d 416 (La.1980).
The trial judge did not articulate his reasons for the sentence he imposed other *955 than to say that a lesser sentence would deprecate the seriousness of the crime. However, we do not find that the sentence was apparently severe.
Hartman was exposed to a possible 21-year sentence but was sentenced to only 15 years at hard labor. The first five years were to be served without benefit of parole, probation, or suspension of sentence in accordance with the mandate of LSA-C. Cr.P. art. 893.1. It does not shock the conscience to impose such a sentence considering the circumstances of this case. This error is without merit.
The conviction and sentence of the defendant are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs for reasons stated numerous times in previous cases, sentences should not be reversed for excessiveness when they are within the parameter of the sentences statute.