GUIDRY, Judge.
Defendant-appellant, Roger Clayton Price, was charged by a bill of information filed July 14,1983, with the crime of armed robbery, a violation of La.R.S. 14:64. On October 22, 1985, he was found guilty as charged by a 12 person jury and thereafter, on November 14, 1985, defendant was sentenced to 40 years at hard labor without benefit of parole, probation or suspension of sentence. He now appeals that conviction and sentence.
Through counsel, defendant urges the following assignments of error:
1. The trial court erred in failing to apply the sentencing guidelines set forth in La.C.Cr.P. art. 894.1.
2. The trial court erred in failing to state for the record the considerations taken into account and the factual basis therefor, in imposing sentence on the de *860 fendant as required by La.C.Cr.P. art. 894.1.
3. The trial court erred in imposing a sentence which, under the circumstances applicable to the defendant, is excessive and an arbitrary infliction of severe punishment resulting in cruel and unusual punishment of the defendant.
4. The trial court erred in that, considering the law and evidence adduced at trial, no reasonable finder of facts could have concluded that the State had carried its burden of proof to establish that defendant was guilty of armed robbery.
Additionally, by way of a pro se brief, defendant argues that he was denied effective assistance of counsel and further asks this court to examine the record for any errors patent on its face.
At this point, a brief history of this case is in order. Besides the heretoforemen-tioned charge, defendant, Price, along with a co-defendant, Jimmy Leroy See, was charged by a separate bill of information with the crime of attempted second degree murder, a violation of La.R.S. 14:27 and 30.1. On February 28, 1984, defendant, Price, as a result of a plea bargain agreement, entered pleas of guilty to charges of armed robbery and aggravated burglary. Price subsequently appealed his convictions and the sentences imposed on those charges and this court reversed the convictions, set aside the sentences and remanded the case for further proceedings. See State v. Price, 461 So.2d 503 (La.App. 3rd Cir.1984).
Some of the argument brought before the court in this appeal refers to matters which transpired in the former proceedings. Inasmuch as defendant’s former convictions and sentences have been reversed, and defendant was re-tried only on the charge of armed robbery, we will not address any errors which allegedly occurred in the former proceedings.
The facts surrounding this matter were concisely set out by the trial judge in his written reasons for sentencing:
“The facts of the case are that on or about June 29,1983, Defendant Price and Jimmy LeRoy See went to the home of Mr. Homer Henderson, an 83 year old white man, who lived alone in his home in Converse, Sabine Parish, Louisiana, for the purpose of robbing him of his automobile. Before approaching the residence of Mr. Henderson, Jimmy LeRoy See handed his pocket knifé to Defendant Roger Clayton Price. Defendant Price and See went to the front door of the home and Jimmy LeRoy See knocked on the front door and, when Mr. Henderson came to the door, asked for a drink of water. Mr. Henderson obtained a glass, and opened the front door to hand him the drinking glass. Defendant Price forced his way into the home, by pushing Mr. Henderson backwards, with Jimmy LeRoy See entering behind him. Price then knocked Mr. Henderson down, striking him in the mouth with his fist, and both Defendant Price, and See, beat Mr. Henderson with their fists. Price then jumped on Mr. Henderson and held him down by sitting on his stomach and holding the open knife to Mr. Henderson’s throat. Jimmy LeRoy See obtained the keys to Mr. Henderson’s car, went outside, started the car, returned inside, grabbed Mr. Henderson’s shotgun from a place where it was leaning against the wall, demanded money of Mr. Henderson, which demand was not successful. Jimmy LeRoy See then struck Mr. Henderson repeatedly about the face and head, and struck him in his lower body, between his legs, with the butt of the shotgun, while Price held him down, and Price cut Mr. Henderson’s throat with the knife, causing a bad cut, which bled profusely, and then Defendant Price and See left Mr. Henderson lying on the floor, took his shotgun, went outside, got into Mr. Henderson's car, and left with the stolen shotgun and car.
They were later apprehended in Texas, following a chase in which the automobile was demolished in a wreck, while they were attempting to escape law enforcement officers. They both waived extradition and were returned to Louisiana. *861 Mr. Henderson’s injuries were extensive, severe and painful. He was hospitalized for a considerable period of time, in serious condition. He has since died, more than one year after receiving his injuries. His total medical expenses were approximately $100,000.00. His hospital bills alone exceded [sic] $68,000.00.”
By assignments of error numbers one, two and three, defendant complains that the trial judge failed to comply with the mandates of La.C.Cr.P. art. 894.1, which provides guidelines to be followed by the trial judge in imposing sentence, and that the sentence imposed by the trial court is excessive and violative of the Louisiana Constitution of 1974, Art. 1, § 20.
La.C.Cr.P. art. 894.1 enumerates those aggravating and mitigating elements a trial judge should consider when imposing sentence upon a defendant. It requires “[t]he court... [to] state for the record the considerations taken into account and the factual basis therefor in imposing sentence.” The purpose of the statute is to afford a reviewing court some insight into the reasoning process of the sentencing judge so that the propriety of the sentence can be better evaluated. State v. Price, 403 So.2d 660 (La.1981).
In State v. Quebedeaux, 424 So.2d 1009 (La.1982), the Louisiana Supreme Court stated:
“The trial judge need not state for the record his consideration of each of the aggravating and mitigating circumstances enumerated in La.C.Cr.P. art. 894.1. The record, however, must reflect that the judge did consider these guidelines in particularizing the sentence to the defendant. State v. Gulden, 399 So.2d 194 (La.1981). The sentencing record, therefore, should reflect that the trial judge did consider not only the seriousness of the crime and the past criminal history of the defendant, but also defendant’s personal history (age, mental status, dependents, family ties, employment record, emotional and physical health) and his potential for rehabilitation. [State v. ] Jones [398 So.2d 1049 (La.1981) ], supra; State v. Molinet, 393 So.2d 721 (La.1981); State v. Jackson, 360 So.2d 842 (La.1978).”
The record before us reflects that the trial judge scrupulously complied with the statutory guidelines of Article 894.1, mentioning, in his written reasons for sentencing, each of the eleven mitigating factors in Section B of Article 894.1.
Counsel for defendant, in brief, argues that the trial judge could not have adequately considered the first five subparts of Section B of Article 894.1 in light of the report of Dr. Phillip C. Jobe, a Ph.D. accepted by the court as an expert in psycho-pharmacology which was offered by counsel for defense at the sentencing hearing. Defense counsel urges that Dr. Jobe was of the opinion that appellant, Price, because of his use of alcohol and drugs, did not know what he was doing at the time he committed the crimes and was, therefore, not responsible for his actions. However, Dr. Jobe, in his report, states: “In my examination of Mr. Price, I found that he did realize that beating the victim was wrong ... Moreover, he was capable of distinguishing between right and wrong at the time that the crime was being committed.” Further, the record contains the psychiatric evaluation of the defendant by Drs. W.A. McBride, Jr., Richard J. Oosta, and Paul D. Ware. All three of the doctors reached the same conclusion. That conclusion, although stated in somewhat different wording by each doctor, in the words of Dr. Ware was:
“I see no reason for further evaluation. In my opinion, the defendant is mentally competent to assist counsel in his defense. I further conclude that at the time of the charges against him, the defendant was mentally competent to be aware of his actions and to effectively distinguish between right and wrong.”
Clearly, the defense argument on this point is without merit.
The maximum sentence for a violation of La.R.S. 14:64 is ninety-nine years at hard labor, without benefit of parole, probation or suspension of sentence. Appellant was sentenced to forty years, less than one-half of the maximum sentence. We find the *862 record more than adequately supports this sentence.
By assignment of error number four, defendant claims that the verdict was not supported by sufficient evidence to prove him guilty beyond a reasonable doubt. In connection with this assignment, he argues that the court impermissibly allowed into evidence, as part of the res gestae, statements made by the now deceased victim to Converse Police Chief Walter Hugh Spill-yards the night of the attack and robbery.
The res gestae doctrine has oft been commented upon in the annals of Louisiana jurisprudence. Some more recent comments by our Supreme Court can be found in State v. Mitchell, 437 So.2d 264 (La.1983), wherein the court stated:
“The res gestae consists of events speaking for themselves under the immediate pressure of the occurrence, through the spontaneous words and acts of the participants. To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:447, 448....”
and in State v. Billiot, 421 So.2d 864 (La.1982), is found the following:
“The amount of time that elapses between the statement and the occurrence of the crime is not the sole consideration of res gestae. The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances. La.R.S. 15:448; State v. Molinario, 383 So.2d 345 (La.1980); State v. Drew, 360 So.2d 500 (La.1978), cert. den., 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979), and cases cited therein.”
We find the events of this case very similar to those in State v. Brown, 395 So.2d 1301 (La.1981). In Brown, supra, statements made by the victim of an aggravated battery to a nurse in a hospital emergency room some three to four hours after the events occurred were found to be admissible. The court therein pointed out that the victim “had been unconscious since the shots were fired, and was under the immediate pressure of the occurrence. The statement is thus admissible as part of the res gestae.” Brown, supra, at 1307.
In the instant case, the elderly victim was found by the witness, Chief Spill-yards, brutally beaten, dazed and bloody in the front of his next door neighbor’s home. The statement by the victim to the witness was made shortly after the crime, at the first possible opportunity, under the immediate pressure of the occurrence, in a situation where the victim had not had sufficient time to reflect on the events that had transpired and to fabricate any of the facts communicated. We find the statement of the victim to the police chief to be spontaneous, made by a person still in shock from a vicious attack and admissible under the res gestae exception to the hearsay rule.
Defendant next attacks as error the trial judge’s admitting into evidence the knife recovered by Constable Oliver from between the back and bottom of the front seat of his patrol car the day after the crimes occurred.
In his confession, which we will consider at a later point in this opinion, Price admitted possession of a knife during the attack and robbery and stated that the knife had been provided to him by See, his co-perpetrator. Constable Oliver testified that See, who was arrested simultaneously with the defendant, squirmed and scratched his back against the front seat of the Constable’s car while being transported from the point of arrest to Hemphill, Texas, all the time complaining of an itchy rash. The Constable also testified that he located the knife the next day in the area See had occupied; that he always locked his car; that he had only had this vehicle about one month at the time of the incident; and, that See was the only serious offender transported by him in that car *863 during that time. He also testified that he turned over the knife, which had a blood stained blade to Officer Joe Byles of the Sabine Parish Sheriffs Department. Officer Joe Byles testified that the only time the knife left his possession was when he “carried it to the Crime Lab to have them check it for blood”.
In State v. Smith, 430 So.2d 31 (La.1983), the Supreme Court stated:
“We have stated that to admit demonstrative evidence at trial, the law requires that the object be identified. State v. Moore, 419 So.2d 963 (La.1982); State v. Drew, 360 So.2d 500 (La.1978). This identification can be visual, that is, by testimony at trial that the object sought to be introduced into evidence is the one related to the case. State v. Robertson, 358 So.2d 931 (La.1978); State v. King, 355 So.2d 1305 (La.1978). A sufficient foundation has been laid for the admission of demonstrative evidence if it has been established that it is more probable than not that the object is the one connection with the case. State v. Sharp, 414 So.2d 752 (La.1982); State v. Davis, 411 So.2d 434 (La.1982).”
We conclude that it was more probable than not that the knife was connected with the case and the trial court did not err in allowing its introduction in evidence.
The last issue raised by counsel is the introduction in evidence of the transcription of an oral confession made by the defendant over objection by the defense. Counsel argues that he only learned of and was provided a transcription of the statement eight days prior to trial. The defense sought to exclude defendant’s confession by way of a motion to suppress filed during the course of the trial based upon the State’s failure to provide the notice required by La.C.Cr.P. art. 768. The trial court denied defendant’s motion.
The record reveals that the defense filed a motion for discovery on July 26, 1983, and that that motion was answered by the prosecution on July 29,1983, with a copy of that answer being delivered to counsel for the defendant, along with a copy of the oral confession. Counsel claims that he never received that answer and accompanying documentation, however, the record reflects otherwise.
The trial court did not err in dismissing the motion to suppress. La.C.Cr. P. art. 768 notice is not required where a defendant has been allowed pretrial discovery.
Finally, we conclude that there is no merit to defendant’s assertion that the State failed to establish his guilt beyond a reasonable doubt.
The test for determining the sufficiency of evidence was first enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and has been followed by Louisiana jurisprudence. See State v. Langford, 483 So.2d 979 (La.1986), and State v. Captville, 448 So.2d 676 (La.1984). In order to afford due process, the evidence, viewed in the light most favorable to the prosecution, must be sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. A careful review of the record in the instant case illustrates that the totality of the evidence provided by the State, including the testimony of the witnesses and the transcribed confession of the defendant, is sufficient to support defendant’s conviction.
Defendant petitioned the court and was permitted to file a pro se, supplemental, brief in which he raised the issue of ineffective assistance of counsel. Specifically, defendant argues that his trial counsel was incompetent in (1) not being present during pretrial proceedings to safeguard defendant’s rights; (2) allowing the consolidation of his case with his co-defendant Jimmy See; (3) not being aware that the State had an unsigned confession made by defendant; (4) allowing the court to sentence the defendant under an inappropriate statute;[1] (5) filing a motion to suppress too late; (6) waiving his opening statement; and, (7) in not following up on discovery or conducting interviews with witnesses.
*864 The right of a defendant to effective counsel is guaranteed by the Sixth Amendment of the U.S. Constitution, and La. Const. 1974 Art. I § 13. Further, La.C. Cr.P. art. 511 provides that a defendant has the right to defend himself with the assistance of counsel.
The standard of performance for effective assistance of counsel under the Sixth Amendment is reasonableness under prevailing professional norms. Hobbs v. Blackburn, 752 F.2d 1079 (5th Cir.), cert. denied, 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985); Mattheson v. King, 751 F.2d 1432 (5th Cir.1985). Effective assistance of counsel must be determined at the time of counsel’s conduct and not from hindsight. Marler v. Blackburn, 111 F.2d 1007 (5th Cir.1985). Even if there is an unreasonable error in the conduct of counsel this does not require the result to be annulled if the error had no effect on the outcome of the proceeding. Hobbs, supra.
Jurisprudence on this issue has yielded a two prong test. First, did counsel violate a duty to the defendant; and, second, if so, did this violation cause prejudice. State v. Hartman, 479 So.2d 948 (La.App. 3rd Cir.1985), writ denied, 486 So.2d 748 (La.1986), cert. denied, — U.S. —, 107 S.Ct. 156, 93 L.Ed.2d 96 (1986); State v. Brogan, 453 So.2d 325 (La.App. 3rd Cir.1984), writ denied, 457 So.2d 1200 (La.1984). The defendant is not entitled to errorless counsel, or counsel ineffective by mere hindsight, but counsel reasonably likely to, and actually rendering reasonably effective assistance.
We have considered defendant’s allegations in light of the principles above set forth and conclude that there is no merit in this assignment of error. For the most part, defendant’s complaints center around his counsel’s alleged failure to conduct pretrial discovery and certain tactical decisions made by counsel during trial. As to the former, defendant does not demonstrate what beneficial evidence could have been uncovered by discovery or from witnesses interviews. As to the latter, allowing consolidation for purposes of preliminary examination only and the decision to make or not make an opening statement are tactical decisions which courts should not “second guess”.
Defendant’s most serious complaint centers around his confession and his counsel’s alleged failure to earlier discover that it existed and to timely file a motion to suppress. The record does not support defendant’s allegations in this regard. Pursuant to pretrial discovery initiated by defendant’s counsel, he was furnished with a transcription of his oral confession on July 29, 1983. According to the record, trial counsel was fully aware of the existence of defendant’s confession on the latter date. On the day of trial, counsel filed a motion to suppress for failure of the State to furnish the notice required by La.C.Cr.P. art. 768. The motion was denied on the basis that notice was not required as defendant had been granted pretrial discovery. Presumably, there existed no other ground upon which to exclude appellant’s confession. The record reveals none. Therefore, in sum, appellant has failed to demonstrate the circumstance of late discovery of the confession or the alleged tardy filing of the motion to suppress or how either may have prejudiced his defense.
Overall, we find the defendant has failed to demonstrate that his counsel did not meet the level of competence normally expected and required of counsel in a criminal case. State v. Fickes, 497 So.2d 392 (La.App. 3rd Cir.1986); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). This assignment lacks merit.
Finally, defendant requests the court to examine the record for errors patent on its face. Such inspection is routinely done in the court’s review of any criminal appeal. Our inspection of the record herein reveals no such errors.
Accordingly, for the reasons stated, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.

. This alleged error occurred during defendant’s earlier guilty plea which was reversed by this court and hence, will not be addressed.