GUIDRY, Judge.
This case comes before us pursuant to a writ for post-conviction relief filed by the relator, in proper person, alleging ineffective assistance of counsel. Finding no merit to relator’s claim, we affirm his conviction and sentence.
Robert Pierre was indicted on August 10, 1982, on charges of aggravated rape and aggravated burglary, violations of La.R.S. 14:42 and 14:60, respectively. On November 17, 1982, a twelve person jury found him guilty as charged. Pierre was sentenced to the mandatory life sentence, without benefit of parole, probation or suspension of sentence, for the aggravated rape conviction and 30 years at hard labor on the aggravated burglary conviction. The sentences were made to run consecutively.
An appeal was taken to this court. Counsel for defendant failed to timely designate the errors which were to be argued *1291 on appeal. Finding no errors patent on the face of the record, we affirmed defendant’s convictions and the sentences imposed. See State v. Pierre, 438 So.2d 1260 (La.App. 3rd Cir.1983).
Subsequently, defendant filed an application for post-conviction relief with the district court claiming he was denied effective assistance of counsel at trial and on appeal. The district court denied the application and a writ was taken to this court. We granted certiorari and ordered the trial court to hold a hearing to determine the merits of relator’s claim. That hearing was held on March 14, 1986. The trial judge found defendant’s claim without merit and we granted certiorari to review that decision.
“To establish a claim of ineffective representation, the defendant must demonstrate that counsel did not meet the level of competency ‘normally demanded’ in criminal cases. An adequate defense must be based on ‘informed professional deliberation.’ McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Felde, 422 So.2d 370 (La.1982). Effective assistance of counsel does not mean ‘errorless’ counsel, or counsel which may be judged ineffective on mere hindsight, but counsel ‘reasonably likely to render and [actually] rendering reasonably effective assistance.’ State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982).
In the recent decision of State v. Berry, 430 So.2d 1005 (La.1983), this court established a meaningful analysis for claims of ineffective assistance of counsel. Adopting the two-pronged inquiry of McQueen v. Swenson, 498 F.2d 207 (8th Cir.1974), this court established the first inquiry as to whether counsel violated some duty to the client. The second inquiry is whether the violation, if any, prejudiced the client in the defense of his case....”
State Ex Rel. Graffagnino v. King, 436 So.2d 559 (La.1983) at 564. See also State v. Hartman, 479 So.2d 948 (La.App. 3rd Cir.1985), writ denied, 486 So.2d 748 (La.1986), certiorari denied, — U.S. -, 107 S.Ct. 156, 93 L.Ed.2d 96.
As part of his claim of ineffective assistance of counsel, relator asserts that he was denied the right to a meaningful appeal by counsel’s failure to file and perfect assignments of error. The failure of counsel to perfect an appeal violates a duty to his client and falls below the level of competency reasonably expected of defense counsel. Flanagan v. Henderson, 496 F.2d 1274 (5th Cir.1974). Therefore, in order to evaluate relator’s claim, we must review the merits of the two assignments of error which defendant asserts were not perfected by trial counsel to determine if counsel’s error in failing to perfect these alleged errors prejudiced defendant. State v. Berry, 430 So.2d 1005 (La.1983); State v. Hartman, supra. Defendant urges that the following errors should have been perfected and urged on appeal: (1) the trial court erred in admitting the evidence obtained pursuant to a search warrant issued in connection with an unrelated case; and, (2) the State introduced insufficient evidence at the trial to convict the defendant of aggravated rape and/or aggravated burglary.
FACTS
On July 21, 1981, an intruder, alleged to be the defendant, made an unauthorized entry into a residence located at 609 South Washington Street, Lafayette, Louisiana. After gaining entry into the house through a bathroom window, the intruder armed himself with several knives he found on the premises. He then forced the 14 year old rape victim, whom he found lying on a cot in the living room, into her mother’s bedroom, where the mother and mother’s boyfriend were sleeping. The intruder informed the occupants that if he was given money no one would be harmed. He then bound the three victims to the bed with cords he cut from electrical appliances. After the intruder took money from a wallet and a tool box, the 14 year old daughter was untied and forced to walk around the house with him searching for money in other rooms. During the search the intruder removed various items of jewelry from the house in addition to the money. After *1292 the search of the house, the young victim was returned to her mother’s room where the offender ordered the mother to give him a high school ring which she was wearing. He then raped the young girl while the victim was lying next to her mother and the mother’s boyfriend and while armed with the knives. The perpetrator was apparently alarmed by noises from outside the house and fled the scene soon after the rape.
The intruder was described as a black man of medium height and wearing a blue cap with stripes. He attempted to conceal his identity by covering the lower portion of his face with a shirt. However, on at least one occasion, the mother viewed the entire face of the intruder when the shirt covering his face fell off. In his haste to leave, he also left his hat behind.
Some four days later, while executing a search warrant at the home of relator, Robert Pierre, in connection with an unrelated burglary, the police seized items of jewelry later identified as the property stolen from the victims on the morning of July 21,1981.
On June 23, 1982, the Lafayette Police Department organized a physical line-up at which the victim’s mother tentatively identified relator. The rape victim made a tentative identification of relator and one other person in the line-up.
ASSIGNMENT OF ERROR NO. 1
Relator contends that jewelry seized pursuant to a search warrant issued in connection with an unrelated matter should not have been introduced into evidence. Relator urges that the evidence was not relevant to the present case and was not seized pursuant to a lawful warrant.
In order to be admitted at trial, evidence must be relevant to a material issue. La.R. S. 15:435. Evidence which tends to show the commission of the offense is relevant. State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1356 (La.1984). Relevancy is determined by the purpose for which the evidence is offered. La.R.S. 15:442. The determination of relevance falls within the trial judge’s discretion and should not be disturbed absent a manifest abuse of discretion. State v. West, 419 So.2d 868 (La.1982).
In their testimony, both the rape victim and her mother testified that the intruder stole various items of jewelry during the incident. Each positively identified the jewelry seized from relator’s apartment as the same jewelry stolen from them. The introduction of the jewelry tended to show that relator was the individual who committed the burglary of the residence. Because the burglar was the same individual who raped the young victim, the introduction of jewelry seized from the apartment of relator, likewise, tended to infer his culpability for the rape. The finding that the evidence was relevant was not an abuse of discretion and the judge properly ruled that the evidence tended to establish relator’s guilt.
La.C.Cr.P. art. 165 provides:
“While in the course of executing a search warrant, a peace officer may ... seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.”
A search warrant may be issued on an affidavit establishing probable cause. La.C.Cr.P. art. 162. Probable cause may be based on the tip of a reliable informant which establishes circumstances from which it may be concluded that contraband is located in a particular location. If the informant is reliable and personally observed the contraband, there is probable cause. State v. Duncan, 420 So.2d 1105 (La.1982).
In the application for the search warrant in question, the affiant stated with particularity the premises to be searched and the particular dresser drawer where the contraband to be seized was located. The affidavit confirmed the reliability of the informant and stated that the informant personally observed the stolen jewelry. The affidavit clearly sufficed to establish probable cause.
In executing the search warrant, the officer removed the drawer described in the warrant and inventoried each item *1293 within the drawer. Although the warrant was granted in regard to an unrelated burglary, the police were not limited to seizing property taken in that unrelated burglary. State v. Feeback, 414 So.2d 1229 (La.1982); La.C.Cr.P. art. 165. The police acted reasonably and were within their authority in seizing other items of jewelry which tended to establish the commission of another offense.
This assignment of error has no merit. Therefore, the failure of counsel to argue it before the appellate court resulted in no prejudice to defendant.
ASSIGNMENT OF ERROR NO. 2
Appellant next argues that the State failed to prove beyond a reasonable doubt that he was the individual who committed the offense. More particularly, relator contends that the State failed to rebut his alibi that he was out of the state on the date of the crimes and that the State failed to positively establish the identity of the offender.
When reviewing a conviction on appeal, the court views all evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could have concluded that the State proved the essential elements of the crime beyond a reasonable doubt. State v. Duncan, supra; State v. Moody, 393 So.2d 1212 (La.1981); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1978). When the key issue is not whether the crimes were committed, but whether the defendant was the perpetrator, the State must negate any reasonable probability of mis-identification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983); State v. Brady, 414 So.2d 364 (La.1982).
In the instant case, relator was found guilty of aggravated rape and aggravated burglary. To establish an aggravated rape in the instant case, the State had to prove that the relator had anal or vaginal intercourse with the victim without her consent and either 1) the victim resisted to the utmost, but was overcome by force, or 2) the victim was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or 3) the victim was prevented from resisting because the offender was armed with a dangerous weapon. La.R.S. 14:42. To establish an aggravated burglary in this case, the State had to prove that 1) relator entered the victim’s home without authority; 2) a person was present at the time of unauthorized entry; and, 3) relator’s entry was made with an intent to commit a felony or theft therein. Additionally, the State was required to prove that after entering, relator either, i) armed himself with a dangerous weapon, or ii) committed a battery upon a person while in the dwelling. La.R.S. 14:60.
In establishing the aggravated rape, the victim testified that the intruder had vaginal intercourse with her against her will. The victim stated that she resisted and that while being raped, the offender was armed with knives. The victim further stated that she was warned by the assailant “that he had already killed somebody so it didn’t matter if he killed us or not”.
In demonstrating the commission of the aggravated burglary, the State offered the testimony of the victim and her mother that the intruder was not given permission to enter the home. The testimony presented also clearly established that the home was occupied at the time of the unauthorized entry. The State proved the intention to commit a theft or felony by the victim’s testimony that the assailant demanded and took both money and jewelry from the occupants. The aggravating circumstance was established by testimony that the intruder armed himself with knives while in the house, robbed the occupants and raped the 14 year old victim while armed.
The testimony of the victim and her mother, viewed in a light most favorable to the prosecution, clearly established the commission of an aggravated rape and an aggravated burglary. Relator contends, however, that the State failed to rebut his assertion that he was out of state on the date of the offense. Relator further ar *1294 gues that there was no evidence identifying him as the offender.
The mother of the victim positively identified relator as the intruder. She stated that the lighting was sufficient to clearly view the intruder and that she saw the intruder’s entire face on at least one occasion during the incident. The victim testified that relator might be the person who raped her.
A forensic chemist testified that relator’s blood type was consistent with the blood grouping on the vaginal swab taken from the victim and that, although the test could not positively establish the identity of the assailant, it could have eliminated him. The same witness studied hair fragments from a cap which was left by the assailant at the crime scene and which was identified as the cap worn by the intruder during the incident. The chemist testified that the features of the hair found in the cap was compatible with and similar to the hair features of relator.
Relator presented five alibi witnesses who testified that he left the city during the month of July 1981. None of these witnesses, however, could state with certainty the exact date of relator’s departure. This evidence was inconclusive as to relator’s whereabouts on the date of the offense.
Relator argues that ineffective assistance is demonstrated by defense counsel’s failure to subpoena telephone company records. Relator claims that the records would have proved that he was in Houston on the day of the offense and that he called collect to his mother in Lafayette. Defense counsel testified that he contacted the telephone company about procuring the records but was advised that such records were destroyed after six months. Furthermore, relator’s mother personally attempt ed to acquire these records before trial but was also informed the records were not kept after six months.
Relator was indicted over one year after the offense was committed. There was no showing that the telephone records existed when defense counsel was appointed to represent him. Defense counsel is not required to take actions which are not necessary and the defendant must show specific prejudice in order to claim ineffective assistance for failing to take such actions. State v. Seiss, 428 So.2d 444 (La.1983).
The failure to subpoena non-existent records was not an error by defense counsel. In any event, even if the telephone records existed, they would only tend to demonstrate that some individual called Lafayette from Houston. These records would not establish the identity of the caller. At trial, although relator’s mother testified that her son called from Houston during July 1981, she could not give a specific date or dates for the call(s). Counsel was successful in placing relator’s alibi defense before the jury. The failure of the jury to believe the alibi defense was not the result of the failure to subpoena non-existent telephone records.
The question of the credibility of witnesses is within the discretion of the fact-finder. State v. Klar, 400 So.2d 610 (La.1981). The State presented sufficient evidence to negate any reasonable probability of mis-identification and served to rebut relator’s alibi defense. The evidence, viewed in a light most favorable to the prosecution, proves beyond any reasonable doubt that relator committed the crimes for which he was convicted.
This assignment of error likewise has no merit and hence, its omission from consideration on appeal resulted in no prejudice to defendant.
Relator next contends that his attorney violated a duty by forbidding him to testify in his own behalf. It is asserted that had relator testified, he would have demonstrated the unreliability of the victim’s mother’s identification. Relator focuses on an incident at which the victim’s mother encountered him while he was held in the parish prison. Relator argues that the mother entered the jail and asked for him by name in order to discover the identity of the suspect. It is the contention of relator that the encounter was orchestrated *1295 by the State to insure a positive identification at the line-up.
Defense counsel testified that he advised relator against testifying but that he was free to decide whether to take the stand. Counsel contested relator’s allegation that he prohibited him from testifying. Although relator did not testify, defense counsel inquired into the reliability of the mother’s identification and cross-examined her regarding the incident.
Defense counsel made a strategic decision in recommending that Pierre not testify. “In some cases, an acquittal is perhaps more easily obtained if a defendant with a criminal record remains silent rather than take the stand and open the door to impeachment by his past convictions. The determination of the defense to remain silent does not in itself constitute ineffective assistance ...”. State v. Myles, 389 So.2d 12, 21 (La.1979).
Relator had several prior convictions. If he had testified, the State would have been able to impeach him by his lengthy criminal record. Defense counsel was able to contest the reliability of the identification without revealing to the jury relator’s prior convictions. Based on the record, it cannot be said that counsel’s informed decision to recommend that Pierre not testify was ineffective. This contention has no merit.
Relator finally alleges ineffective assistance in defense counsel’s failure to seek suppression of the line-up and the in court identifications of relator by the victim’s mother. Relator contends that the identifications were tainted because the victim’s mother obtained a “preview” before the line-up when relator was identified in his cell. Pierre contends that he would not have been identified but for this incident. Relator also testified at his post-conviction hearing that the line-up was unduly suggestive in that he was the only individual wearing tennis shoes and because the other individuals were unshaven.
At trial, the victim’s mother explained that the incident occurred when she was visiting a friend incarcerated in the parish jail. The witness testified that her view of relator was spontaneous and unplanned, and that she immediately recognized him as the individual who raped her daughter and burglarized her home. The victim’s mother further testified that she was provided with no photographs, clues or suggestions when she made the tentative identification of relator at the police line-up. Finally, the mother positively identified Pierre at trial.
The testimony of the police detective who organized the physical line-up contradicted relator’s testimony regarding the suggestiveness of the line-up. Additionally, the line-up form introduced into evidence conflicted with Pierre’s account, showing all subjects to be dressed alike and barefooted.
The defendant seeking to suppress an identification has the burden of proving suggestiveness and the likelihood of misidentification. State v. Cotton, 471 So.2d 1017 (La.App. 1st Cir.1985); State v. Chaney, 423 So.2d 1092 (La.1982). In those cases where a pretrial identification is impermissibly suggestive, an in-court identification is admissible when it has an independent basis. State v. Winn, 412 So.2d 1337 (La.1982). Where an identification occurs independent of any police procedure, the rules regarding unnecessarily suggestive identification procedures do not apply. State v. Mitchell, 453 So.2d 1260 (La.App. 3rd Cir.1984), writ denied, 457 So.2d 16 (La.1984).
In the instant case, defense counsel received a report on the physical line-up and, after reviewing photographs of the individuals in the line-up, felt there was no ground for a motion to suppress. The record establishes that there was no undue suggestion in the line-up. Counsel is not under a duty to file motions which are unnecessary. Seiss, supra. Furthermore, the original prison encounter apparently occurred independent of any police procedure. As in Mitchell, supra, the out-of-court identification in the instant case was unsolicited and spontaneous. Relator has not shown prejudice resulting from defense counsel’s failure to file a motion to suppress the identification. This last contention likewise has no merit.
*1296 Accordingly, for the reasons stated, the writ granted is recalled and defendant’s convictions and the sentences imposed are affirmed.
Writ recalled and dismissed.