KING, Judge.
The issue presented by this appeal is whether the evidence was sufficient to adjudicate a juvenile as a delinquent child for distribution of cocaine.
Ronald Babineaux (hereinafter the juvenile), who is a minor, was charged by petition filed in the Natchitoches City Court with being a delinquent child because of committing the delinquent act of distribution of cocaine, a violation of La.R.S. 40:967(A). The juvenile was tried on the charge and adjudicated a delinquent child. At the dispositional hearing the juvenile was placed in the custody of the Louisiana Department of Public Safety and Corrections for a period of time not to exceed his twenty-first birthday. The juvenile timely appeals his conviction. We reverse.
FACTS
On July 8, 1989, Officer John F. Jackson of the DeRidder Police Department was working as a narcotics undercover agent in Natchitoches, Louisiana, in conjunction with the Natchitoches Parish Sheriff’s Department. Acting on a tip from a confidential informant, Officer Jackson went to the Fairgrounds Housing Complex in search of twins who were selling cocaine rocks. Accompanied by the confidential informant, Officer Jackson purchased three cocaine rocks from a person whom he testified at trial was the juvenile. Based on this evidence, the juvenile was charged with the delinquent act of distribution of cocaine and subsequently adjudicated a delinquent child. The juvenile appeals his conviction to this court, citing one assignment of error.
ASSIGNMENT OF ERROR NUMBER 1
The juvenile contends that the evidence adduced at trial was insufficient to support his adjudication beyond a reasonable doubt.
In order to obtain a conviction under La.R.S. 40:967(A), the State must prove beyond a reasonable doubt that the juvenile committed a delinquent act by distributing a substance which is classified under Schedule II as a controlled dangerous sub *695 stance; in this case, cocaine. La. C.J.P. Art. 73. The juvenile does not question the trial court’s finding that the substance cocaine was sold to Officer Jackson. The juvenile does not argue that a controlled dangerous substance was not distributed. Rather, the juvenile argues that he has not been adequately identified as the person who sold the cocaine to Officer Jackson.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State Ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). It is the role of the factfinder to weigh the respective credi-bilities of the witnesses and, therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See, State Ex rel. Graffagnino, supra. When the key issue is not whether a crime was committed, but whether the defendant was the perpetrator, the State must negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983); State v. Long, 408 So.2d 1221 (La.1982); State v. Pierre, 524 So.2d 1289 (La.App. 3 Cir.1988).
Officer Jackson, on direct examination by the State, testified as follows:
“Q. Let me ask you this, did you receive information from your confidential informant concerning the defendant Ronald Babineaux?
A. Yes, sir.
Q. And did you receive information from the confidential informant that he had twin brother, Donald Babineaux?
A. Yes, sir.
Q. And, were you — did you inquire as to how you, you know, could tell the difference, or did you make any inquiries as to that?
A. Well, on that purchase day that was my first time ever meeting the twins; of meeting one of them. He wasn’t wearing a shirt and he had a scar on one of his shoulders; he had been in an accident and—
Q. And the person that had the scar on ’ his shoulder that had been in the accident, is that the one you purchased the cocaine from?
A. Yes, sir.”
Following the testimony, Officer Jackson was asked to make an in-court identification of the juvenile. However, at the beginning of trial, with the trial judge’s prior knowledge and over vehement objection by the State, the juvenile’s twin brother, Donald Babineaux, was allowed to sit next to counsel at the defense table while the juvenile sat in another part of the courtroom.[1] Predictably, Officer Jackson mistakenly identified the juvenile’s twin brother sitting next to counsel at the defense table as the one from whom he had purchased cocaine.
After this mistaken in-court identification, Officer Jackson then again positively testified that the person from whom he purchased the cocaine had a scar on one of his shoulders. Both the juvenile and his twin brother, upon the State’s request, then approached the witness stand and removed their shirts for the purpose of allowing Officer Jackson to identify the scar. He could find no scar on the shoulder of either the juvenile or his twin brother. At this time Officer Jackson realized he had made a mistaken in-court identification of the juvenile’s twin brother and that his testimony was not correct.
The juvenile and his twin brother were then seated and the direct examination of Officer Jackson continued:
“Q. All right. Did you see any other identifiable marks on the person that you purchased the alleged cocaine from?
*696 A. Well, he had a mark on his lip, a scar.
Q. Do you see that mark on either one of these fellowsf’] lips[?]”
At this point, the juvenile and his twin were asked to again approach the witness stand, and Officer Jackson identified the one with the scar on his lip as the juvenile. No other identification testimony or evidence was introduced at trial.
The juvenile’s mother, father, uncle, and cousins, all testified that the juvenile was out of town for a period of two weeks which included the day the narcotics sale to Officer Jackson took place. The trial judge did not find the testimony of the juvenile’s alibi witnesses credible and, after a review of the record, because of the inconsistency of the testimony, we agree.
Nevertheless, when all of the evidence concerning the identification of the juvenile is viewed in the light most favorable to the prosecution, as required under Jackson, the juvenile’s conviction still cannot stand. This conclusion is not just based on Officer Jackson’s initial misidentification of the juvenile’s twin brother, since in a situation involving twins it was virtually certain that the officer would mistakenly identify the individual sitting in the courtroom next to defense counsel as the juvenile that had been accused. Rather, it is also based on the weakness of the positive identification by Officer Jackson and the lack of other evidence or testimony identifying the juvenile as the person who made the sale to the officer.
Officer Jackson asserted, before being asked to make any in-court identification of the juvenile or his twin brother, that the juvenile he bought the cocaine from had a scar on his shoulder. However, the officer could locate no such scar on the juvenile or his twin brother in the courtroom. At this point, after both twins had stood directly in front of the officer in the courtroom and after the officer realized he had given inaccurate testimony, the officer stated that the person who had sold him the cocaine had a scar on his lip. Officer Jackson had made no mention of a sear on the lip of the person who sold him the cocaine prior to this time. Then, after seeing such a scar on the lip of the juvenile in the courtroom, Officer Jackson identified the juvenile as the person from whom he bought the cocaine on the basis of the scar on his lip.
Further, Officer Jackson testified that, when he arrived at apartment 421-C of the Fairgrounds Housing Complex to make the buy, Ms. Audrey Babineaux, the juvenile’s mother, was outside raking trash. According to Officer Jackson, he asked her if “one of the twins was home.” Ms. Babineaux told him to wait a moment and then went inside the apartment. Shortly thereafter, a person whom Officer Jackson testified was the juvenile, came outside. However, the record is devoid of any evidence that the person who came out was the juvenile and not his twin brother. Officer Jackson did not testify as to how he knew the person he saw was Ronald Babineaux except to state the following:
“Q. Officer Jackson, how did you make a determination that this was Ronald Babineaux, how did you get the name?
A. Ronald?
Q. Yeah.
A. From the CL”
The confidential informant did not testify at trial as to how he knew the person who sold the cocaine was the juvenile and there is absolutely no evidence in the record to even suggest that Officer Jackson had any idea which one of the twins he actually dealt with at the time he made the buy. The record also does not contain any details of the arrest, such as when or how it occurred, how identification was made that the person arrested was the one who made the sale, or any other information at the time of the booking of the juvenile that could possibly provide an adequate basis for identification of the juvenile as the person who sold the cocaine to Officer Jackson.
Under these circumstances, even after viewing the evidence in the light most favorable to the State, we find that a reasonable trier of fact could not have found the juvenile guilty beyond a reasonable doubt of committing a delinquent act.
*697 For the foregoing reasons, the adjudication of the juvenile is reversed and his disposition is vacated.
ADJUDICATION REVERSED AND DISPOSITION VACATED.
KNOLL, J., dissents and assigns reasons.

. We specifically do not review the propriety, legality, or ethics of the action of the trial court in allowing someone, other than the juvenile, to sit at trial with the juvenile's counsel and pose as the juvenile. The State has not answered the appeal or even filed a brief to raise this issue on appeal.